

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-2000

# Sandvik AB v. Advent Intl Corp

Precedential or Non-Precedential:

Docket 00-5063

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Sandvik AB v. Advent Intl Corp" (2000). *2000 Decisions.* Paper 150.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/150

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 21, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-5063

SANDVIK AB

v.

ADVENT INTERNATIONAL CORP; ADVENT
INTERNATIONAL GMBH; GLOBAL PRIVATE EQUITY III
L.P.; GLOBAL PRIVATE EQUITY III-A L.P.; GLOBAL
PRIVATE EQUITY III-B L.P.; ADVENT PGGM GLOBAL L.P.;
ADVENT PARTNERS GPE-III LP; ADVENT PARTNERS (NA)
GPE-III L.P.; ADVENT EURO-ITALIAN DIRECT
INVESTMENT PROGRAM L.P.; ADVENT EUROPEAN
CO-INVESTMENT PROGRAM L.P.; ADVENT PARTNERS
L.P.; RALF HUEP; GLOBAL PRIVATE EQUITY III-C L.P.

Advent International Corp.; Global Private Equity III L.P.;
Global Private Equity III-A L.P.; Global Private Equity III-B
L.P.; Advent PGGM Global L.P.; Advent Partners GPE-III LP;
Advent Partners (NA) GPE-III L.P.;
Advent Euro-Italian Direct Investment Program;
Advent European Co-Investment Program L.P.;
Advent Partners L.P. Global Private Equity III-C L.P.,
Appellants

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. No. 99-cv-00486)
District Judge: Honorable Roderick R. McKelvie

Argued: April 27, 2000

Before: BECKER, Chief Judge, BARRY and
BRIGHT* Circuit Judges.

_____

* Honorable Myron H. Bright, United States Circuit Judge for the Eighth
Circuit, sitting by designation.

(Filed: July 21, 2000)

ROBERT B. DAVIDSON, ESQUIRE
  (ARGUED)
Baker & McKenzie
805 Third Avenue
New York, NY 10022

THOMAS PEELE, ESQUIRE
Baker & McKenzie
815 Connecticut Avenue, NW
Washington, DC 20006

Counsel for Appellants

WILLIAM P. QUINN, JR., ESQUIRE
  (ARGUED)
BRIAN T. FEENEY, ESQUIRE
Morgan, Lewis, & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

ARTHUR G. CONNOLLY, JR.,
 ESQUIRE
Connolly, Bove, Lodge & Hutz
1220 Market Street
P.O. Box 2207
Wilmington, DE 19899-2207

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal arises under the Federal Arbitration Act
("FAA"), 9 U.S.C. S 1 et seq. It requires that we consider
the enforceability of an arbitration clause in a putative
contract between Sandvik AB, a Swedish manufacturing
corporation, and Advent International Corporation, which is
an equity investment firm based in the United States and
incorporated in Delaware, and its associated investment
funds for the sale of certain Sandvik subsidiaries to a joint
venture company to which Advent would contribute capital.

When Advent communicated that it did not view itself as bound by the agreement, Sandvik filed a suit in Delaware state court, and that suit was removed to the District Court for the District of Delaware. Though denying that it was bound by the contract--Advent contends that the agent who signed the agreement on its behalf lacked authority to do so and that it had so notified Sandvik--Advent moved to compel arbitration under an arbitration clause contained in the agreement. Sandvik objected, contending that the validity of the arbitration clause depended on the validity of the agreement and that that question had to be determined by the District Court. The District Court denied the motion to compel, reasoning that the existence of the underlying contract, and thus the arbitration clause with it, was in dispute.

This appeal presents the anomalous situation where a party suing on a contract containing an arbitration clause resists arbitration, and the defendant, who denies the existence of the contract, moves to compel it. Two issues are presented. The first question pertains to our jurisdiction. Sandvik contends that this interlocutory appeal falls outside the FAA's interlocutory appeal provisions because the District Court has not reached a final conclusion on the validity of the arbitration clause. We conclude that this argument is misplaced for three reasons. First, the statute's plain language contemplates interlocutory appeals from orders of the sort entered by the District Court. Second, other parts of the statute evince clear Congressional intent that challenges to refusals to compel arbitration be promptly reviewed by appellate courts. Third, the issue that the District Court must decide in determining whether the arbitration clause is valid is closely bound with the underlying dispute as to whether an overall contract was entered into by the parties. It is precisely this sort of appeal that the FAA's interlocutory appeal provisions were designed to address. We thus have appellate jurisdiction.

The second question is whether the District Court was correct in refusing to compel arbitration. Advent argues that the arbitration clause is severable from the contested agreement under the doctrine announced by the Supreme

3

Court in Prima Paint Corp. v. Flood & Conklin Manufacturing. Co., 388 U.S. 395 (1967). Advent agrees that it is bound by the arbitration clause even though it claims never to have bound itself to the underlying contract. Sandvik rejoins that cases establish that when a party claims not to have even signed a contract, the district court must first determine whether a valid arbitration agreement was signed. This is a close question, but we conclude that Sandvik has the better of the argument. Even under the severability doctrine, there may be no arbitration if the agreement to arbitrate is nonexistent. Advent's concession that the arbitration clause is binding has only a limited effect, because Advent denies the legal validity of the act that brought the arbitration clause into effect--i.e., the signing of the agreement. As a result, Advent's recognition of the arbitration clause is essentially an offer to be bound, and not a manifestation of an underlying binding contract. We will therefore affirm the District Court's order denying the motion to compel.

I.

The parties do not dispute the relevant facts as recited in the District Court's opinion, which we summarize as follows. Plaintiff Sandvik is a Swedish corporation that has its primary place of business in Sandviken, Sweden. It produces specialty industrial goods. Defendant Advent International Corporation is a Delaware corporation headquartered in Boston, Massachusetts. It is a private equity investment firm with offices around the world. Advent is also general partner in a number of limited partnerships ("Advent Funds") that perform Advent's investment operations. The Advent Funds are also defendants in the case.

In early 1998, Sandvik decided to divest itself of three subsidiaries, Sandvik Sorting Systems, Inc., CML Handling Technology S.p.A., and CML K.K. (collectively, "Sandvik Sorting"), and entered into negotiations with Advent. During the negotiations, Advent's principal representative was Ralf Huep, general manager of Advent GmbH, which is based in Germany, and a director of Advent's British affiliate.

In September 1998, Advent, through one of its investment funds, Global Private Equity III L.P. ("GPE"), executed a Letter of Intent outlining proposed terms for the acquisition of Sandvik Sorting. The letter provided that while Advent conducted its due diligence review of Sandvik's records, Sandvik would not entertain bids from other prospective purchasers. Later that year, Advent proposed a structure for the transaction, suggesting that Sandvik maintain a minority stake in Sandvik Sorting by investing in the post-acquisition enterprise. To accomplish the goal, Advent proposed a new joint venture company that would purchase Sandvik Sorting from Sandvik.

On February 16, 1999, a Joint Venture Agreement ("JVA") was executed. Huep signed on behalf of the Advent Funds. He executed the agreement as "an attorney-in-fact without power-of-attorney." The agreement bound the parties to form International Sorting Systems Holding B.V., to contribute capital to the new company, and to direct the company to enter into a Share Purchase Agreement that would provide for the company's purchase of all of Sandvik's interest in Sandvik Sorting. The JVA also contained a mandatory arbitration clause, providing that "[a]ny dispute arising out of or in connection with this Agreement and/or any agreement arising out of this Agreement shall, if no amicable settlement can be reached through negotiations, be finally settled by arbitration in accordance with the rules of the Netherlands Arbitration Institute."

On April 30, Advent, in a letter written by Huep, notified Sandvik that Advent Funds did not intend to honor the JVA. Huep stated that he signed the JVA without proper authorization from Advent, and that the agreement was therefore not binding.[1] Sandvik sued, bringing claims for

_____

1. Appellants placed evidence in the record that represents that the phrase "attorney-in-fact, without power-of-attorney" is a well-known concept in German law (where it is rendered as " Vertreter ohne Vertretungsmacht"). They maintain that signing an agreement in such a capacity means that the agent has no authority to bind his or her principal and that any agreement signed by an agent who is "attorney-in-fact, without power-of-attorney" does not become valid until the principal ratifies it.

5

breach of contract, fraud, reckless misrepresentation, and negligent misrepresentation. The suit, brought in Delaware state court, was removed to federal court pursuant to 9 U.S.C. S 205, which permits removal from state courts when the subject matter of the case relates to an arbitration agreement under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), to which both Sweden and the United States are signatories. See CREFAA, opened for signature June 10, 1958, 21 U.S.T. 2517 (entered into force by the United States, Dec. 29, 1970). Advent Funds then moved to compel arbitration under the FAA. The District Court refused, reasoning that it lacked authority to enforce the arbitration agreement until it determined whether the parties entered into a binding agreement. Appellants (collectively hereafter referred to as "Advent") filed a timely notice of appeal.2 There are no questions of fact before us, and our review of all legal issues is plenary.

II.

This matter arises under Chapter Two of the FAA, which implements the CREFAA. Article II S 3 of the CREFAA provides that

> [t]he court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Section 206 of the FAA allows district courts to issue orders to compel arbitration, see 9 U.S.C. S 206, as does a similar provision in Chapter One of the FAA, see id.S 4.

_____

2. Advent also moved for a stay pending arbitration, which the District Court similarly refused to grant. In addition, the District Court also denied motions by Advent to dismiss under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), and for forum non conveniens grounds. The court also deferred ruling on a motion by Huep and Advent GmbH to dismiss for lack of personal jurisdiction, pending limited discovery on the issue. These additional matters are not before us.

As noted above, and considered in greater detail below, the District Court concluded that it could not order arbitration until it determined the validity of the underlying contract. The FAA provides for interlocutory appeals from a District Court's refusal to compel arbitration. See 9 U.S.C. S 16(a) ("An appeal may be taken from . . . an order . . . denying a petition under section 4 of this title to order arbitration to proceed, [or] denying an application under section 206 of this title to compel arbitration."). Here, the District Court entered an order denying Advent's motion to compel. On the surface, therefore, this Court appears to have jurisdiction under 9 U.S.C. S 16, as Advent contends.

Sandvik submits that jurisdiction is lacking. It reasons that, because the District Court stated that it would have to make a determination of whether there was an actual agreement to arbitrate, refusal to order arbitration was not final for purposes of an interlocutory appeal under 9 U.S.C. S 16. The FAA, however, does not support Sandvik's proffered interpretation. The language of S 16 provides for appeals of orders denying arbitration, and it makes no distinction between orders denying arbitration and "final orders" that accomplish the same end.

Moreover, the statute's structure plainly indicates the appealability of the District Court's order. The statute provides for a range of appealable orders in arbitration matters.3 In addition to providing for the appeal of orders

_____

3. In full, the provision provides:

    (a) An appeal may be taken from--

    (1) an order--

     (A) refusing a stay of any action under sectio n 3 of this title,

     (B) denying a petition under section 4 of this  title to order arbitration to proceed,

     (C) denying an application under section 206 o f this title to compel arbitration,

     (D) confirming or denying confirmation of an award or partial award, or

     (E) modifying, correcting, or vacating an awar d;

7

that deny an application to compel arbitration, see id. S 16(a)(1)(C), the FAA contains a catch-all provision regarding any "final decision with respect to an arbitration that is subject to this title," id. S 16(a)(3). This latter passage is significant in two respects. One could read this provision as applying to situations in which the District Court makes a "final" order directing arbitration. But this is the same sort of order that Sandvik claims is covered by S 16(a)(1). If this is the case, and Sandvik's interpretation of S 16(a)(1) is followed, then the provision providing for appeals from denials of orders to arbitrate would become surplusage in light of the more expansive language in S 16(a)(3). The more natural reading would therefore be to treat all orders declining to compel arbitration as reviewable.

Second, even if one were to read the quoted language as applying only to orders that pertain to arbitrations that actually occur (and whose commencement are not in dispute as here),4 the clause reflects that Congress decided to use the word "final" in one part of the statute, but declined to do so in the section that declares that orders denying motions to compel arbitration are indeed appealable. Furthermore, the statute provides a list of

_____

  (2) an interlocutory order granting, continuing, o r modifying an
  injunction against an arbitration that is subject to this title; or

  (3) a final decision with respect to an arbitrat ion that is
subject to
  this title.

  (b) Except as otherwise provided in section 1292(b ) of title 28,
an
  appeal may not be taken from an interlocutory order--

  (1) granting a stay of any action under section 3 of this title;

  (2) directing arbitration to proceed under section  4 of this
title;

  (3) compelling arbitration under section 206 of th is title; or

  (4) refusing to enjoin an arbitration that is subj ect to this
title.

9 U.S.C. S 16.

4. That is not how this Court interprets the provision. See John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 135-36 (3d Cir. 1998).

interlocutory arbitration–related orders that are not appealable, see id. S 16(b), which pertains solely to situations in which arbitration is ordered and makes no mention of factual situations analogous to the current one.

In similar circumstances, our sister circuits have heard interlocutory appeals of refusals to order arbitration. See Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 363 (7th Cir. 1999) (holding that, despite the district court's declaration of a need for discovery before a decision could be reached on the arbitration issue, there was no doubt that the requested order was denied, and was thus appealable); McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1193 (8th Cir. 1997) (reviewing a district court's refusal to order arbitration prior to discovery on issue of arbitrability, declaring "an order that favors litigation over arbitration . . . is immediately appealable under S 16(a)."). Sandvik's effort to distinguish these cases is unpersuasive. It argues that the cited cases concerned the question whether an agreement to arbitrate encompassed the claims pled in the complaint and not whether there was any arbitration agreement at all. The important point arising from those cases, however, has little to do with determining the nature of the specific controversy, but is rather that, even if a district court does not feel itself ready to make a definitive decision on whether to order arbitration and therefore denies a motion to compel, an appeal may be heard of its denial order. Sandvik is unable to refute or distinguish this principle away.

Sandvik is similarly unable to provide persuasive cases to the contrary. It cites Chase v. Sidney Frank Importing Co., Inc., 133 F.3d 913, No. 97–1407, 1998 WL 3609 (4th Cir. Jan. 8, 1998), an unpublished opinion in which the court refused to hear an interlocutory order in a similar case. The court concluded that the appeal was not ripe for review because the district court had not determined the enforceability of the arbitration clause. There, however, the party resisting arbitration specifically claimed fraud in the inducement of the arbitration clause. As we discuss in greater detail below, the Supreme Court has made clear that a district court may decide whether such fraud

9

occurred prior to compelling arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the `making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.") (footnote omitted). In other words, there was no legal question for the court of appeals to consider in that matter because the key issue, whether there was fraud in the inducement of the arbitration clause, was clearly within the district court's purview. We conclude that the applicable precedents more persuasively favor Advent's position that we have jurisdiction.

Finally, jurisdiction comports with the purposes of the FAA. Refusing Advent's appeal could circumvent the FAA's clear purpose of enforcing binding arbitration agreements. Indeed, the facts of this matter demonstrate the importance of reading 9 U.S.C. S 16 to reach Advent's appeal. The question whether there was a binding arbitration clause is quite possibly inextricably bound with the underlying merits of the case--that is, the question whether the parties entered into the underlying contract. Both appear to turn on the legal effect of Huep's signature on behalf of Advent. See supra note 1. Were we to refuse to hear Advent's appeal, Advent faces the possibility of enduring a full trial on the underlying controversy before it can receive a definitive ruling on whether it was legally obligated to participate in such a trial in the first instance. For the reasons set forth above, we are of the view that the FAA's text and the precedents interpreting it militate against such a result.

III.

Having satisfied ourselves of our appellate jurisdiction, we turn to the merits. This matter is complicated by the stances the parties have assumed for purposes of this appeal. Both sides take positions that appear at odds with their underlying positions in the larger controversy. Sandvik claims that there can be no arbitration at this

stage despite its legal position that the JVA, which calls for arbitration, is binding. Advent claims that there must be arbitration despite its underlying position that the JVA is invalid.

A.

The FAA establishes a strong federal policy in favor of compelling arbitration over litigation. The Act provides that if a party petitions to enforce an arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. S 4. The presumption in favor of arbitration carries "special force" when international commerce is involved, see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985), because the United States is also a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The CREFAA commits the courts of signatory states to refer parties to arbitration when the parties have agreed to arbitrate disputes. See CREFAA Art. II. CREFAA is enforced in the United States under Chapter Two of the FAA.

These statutory pronouncements and legal precepts do not, however, undermine the principle that the "liberal federal policy favoring arbitration agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements." Mitsubishi, 473 U.S. at 625 (citation and quotation omitted). Accordingly, the District Court concluded that it had to first determine if there was indeed an arrangement to arbitrate, which it viewed itself as unable to do without determining whether Huep's signature actually bound Advent to the JVA that contained the arbitration agreement. The CREFAA similarly provides that a court of a signatory state will not refer the parties of a dispute to arbitration if it finds that the agreement to arbitrate is "null and void, inoperative or incapable of being performed." See CREFAA Art. II S 3.

Advent adverts to a similarly established principle in arguing that the District Court erred--the notion of

11

severability. It submits that the fact that it disputes the very existence of a binding JVA does not automatically translate to a disputation of the validity of the JVA's arbitration clause. The point of departure for this argument is Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967). In that case, the plaintiff brought an action to rescind its contract with the defendant, who moved to arbitrate the dispute. See id. at 398–99. The Supreme Court upheld the district court's order staying the action pending arbitration, ruling that an arbitration clause was to be enforced even though a party to the contract sued to rescind the contract on the basis of fraud in the inducement.

The Court explained that if the arbitration clause itself was claimed to be fraudulently induced, the court could decide the matter. See id. at 403–04. "We hold, therefore, that in passing upon . . . [an] application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." Id. at 404."So, for example, a challenge based on fraud in the inducement of the whole contract (including the arbitration clause) is for the arbitrator, while a challenge based on the lack of mutuality of the arbitration clause would be for the court." Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 868 (7th Cir. 1985) (citation omitted). Importantly, as discussed further below, Prima Paint's holding addressed the effect of fraud in the inducement claims. It did not grapple with what is to be done when a party contends not that the underlying contract is merely voidable, but rather that no contract ever existed.

This distinction is an important one, for though arbitration clauses are severable from their larger contracts, the question whether the underlying contract contains a valid arbitration clause still precedes all others because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). We must therefore consider how this

12

principle interacts with the severability doctrine announced by Prima Paint. Neither party disputes that Prima Paint and its progeny must be reckoned with notwithstanding that Prima Paint did not involve the CREFAA. See 9 U.S.C. S 208 (providing that Chapter One of the FAA applies to CREFAA cases to the extent that it is not in conflict with Chapter Two of the FAA and the provisions of the convention).

Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51 (3d Cir. 1980), is the most relevant precedent from this Court. There the issue was whether the plaintiff had actually entered into an arbitration agreement and whether the relevant documents, which contained an arbitration clause, were intended as contracts. See id. at 53. We held that, before arbitration could be ordered, the district court had to be certain that there was an agreement to arbitrate, a question that in turn implicated the validity of the underlying contract:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.

Id. at 54 (footnote omitted). On the facts of the case, the panel concluded that, because the plaintiff denied intending to execute a contract and because there was an issue over whether the person signing the disputed document had authority to execute the contract, a trial on the existence of the agreement was necessary before arbitration could occur. See id. at 55.

B.

Par-Knit Mills appears to support Sandvik's position that the District Court must first determine whether any contract was entered into before it can compel arbitration. Advent disagrees and urges this Court to draw a distinction between two types of cases: those in which the party

13

resisting arbitration is also suing to enforce the entire contract, as here, and those in which the party resisting arbitration also denies the existence of the whole agreement, as was the case in Par-Knit Mills. Advent agrees that when the party who resists arbitration also claims that there was no overall contract, then the district court must first make a ruling on whether a contract existed before it may compel arbitration. Advent contends, however, that no such finding is necessary when, as here, the party resisting arbitration seeks to enforce the same contract that contains the arbitration clause. Advent submits that, because the agreements to arbitrate are severable from the contracts in which they are embedded, and both parties agree that there is an agreement to arbitrate, arbitration must be ordered.

We do not find the reading proffered by Advent to be persuasive. Rather, we conclude that the doctrine of severability presumes an underlying, existent, agreement. Such an agreement exists, under the Prima Paint doctrine, even if one of the parties seeks to rescind it on the basis of fraud in the inducement. Par-Knit Mills makes clear, however, that it does not if no contract ever existed. This distinction was drawn in detail by Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc., 925 F.2d 1136 (9th Cir. 1991), which carries several similarities to the current dispute. As here, the plaintiff resisted the arbitration sought by the defendant when the underlying issue was whether the contract containing the arbitration clause was invalid because it had been signed by an unauthorized individual. See id. at 1138. Unlike Sandvik, however, the plaintiff in Three Valleys was also the party claiming the contract's invalidity. For purposes of our analysis, as discussed in greater detail below, we conclude that this is a distinction with little difference.

In ruling for the plaintiff, the Ninth Circuit accepted that the Prima Paint doctrine extends to grounds for contract rescission other than fraud in the inducement, such as frustration of purpose, duress, unconscionability, and the like. See id. at 1140. Nonetheless, the court refused to order arbitration before the district court could rule on the question whether a valid binding contract had been entered into at all. "[W]e read Prima Paint as limited to challenges

14

seeking to avoid or rescind a contract––not to challenges going to the very existence of a contract that a party claims never to have agreed to." Id. The court then made a significant legal distinction. "Under this view, Prima Paint applies to `voidable' contracts––those `where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract.' " Id. (quoting Restatement (Second) of Contracts S 7 cmt. b (1981)); see also In re Pollux Marine Agencies, Inc., 455 F. Supp. 211, 219 (S.D.N.Y. 1978). The court then went on to cite a number of cases that it deemed consistent with its interpretation of the Prima Paint doctrine, including this Court's opinion in Par-Knit Mills.5

_____

5. As Three Valleys recited:

   Ample case law supports this holding. See, e.g. , Camping Constr. Co.
   v. District Council of Iron Workers, Local 378, 915 F.2d 1333, 1340
   (9th Cir.1990) ("The court must determine whether a contract ever
   existed; unless that issue is decided in favor of the party seeking
   arbitration, there is no basis for submitting any question to an
   arbitrator."); National R.R. Passenger Corp. v. Boston & Maine Corp.,
   850 F.2d 756, 761 (D.C.Cir.1988) ("if there was never an agreement
   to arbitrate, there is no authority to require a party to submit to
   arbitration"); I.S. Joseph Co.[Inc., v. Mich. Sugar Co], 803 F.2d [396,]
   400 [(8th Cir. 1986] ("the enforceability of an arbitration clause is a
   question for the court when one party denies the existence of a
   contract with the other"); Cancanon v. Smith Barney, Harris, Upham
   & Co., 805 F.2d 998 (11th Cir.1986) (defense of fraud in the factum
   is not arbitrable). In fact, there are at least four cases, under the
   Federal Arbitration Act, where a court has held that the question of
   whether a particular individual has authority to bind a party must
   be determined by the court, not by an arbitrator.  See Par-Knit Mills,
   Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir.1980); N & D
   Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722 (8th Cir.1976);
   Smith Wilson Co. v. Trading & Dev. Establishment, 744 F.Supp. 14
   (D.D.C.1990); Ferreri v. First Options, Inc., 623 F.Supp. 427
   (E.D.Pa.1985).

Id. at 1141; see also Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 855 (11th Cir. 1992) ("Prima Paint has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract never existed at all." (citing Three

Valleys)).

15

We find this analysis persuasive. Because under both the CREFAA and the FAA a court must decide whether an agreement to arbitrate exists before it may order arbitration, the District Court was correct in determining that it must decide whether Huep's signature bound Advent before it could order arbitration. This is a necessary prerequisite to the court's fulfilling its role of determining whether the dispute is one for an arbitrator to decide under the terms of the arbitration agreement. See AT&T Techs. v. Communications Workers of Am., 475 U.S. 643, 651 (1986). Mindful of the doctrine announced in Prima Paint , which did not consider a situation in which the existence of the underlying contract was at issue, we draw a distinction between contracts that are asserted to be "void" or non-existent, as is contended here, and those that are merely "voidable," as was the contract at issue in Prima Paint, for purposes of evaluating whether the making of an arbitration agreement is in dispute.6

C.

Allowing the District Court to pass on the question whether the arbitration agreement is valid when the party asserting the right to arbitrate denies the broader agreement comports with contract law principles. As discussed above, arbitration is a matter of contract, and no arbitration may be compelled in the absence of an agreement to arbitrate. See AT&T Techs., Inc. , 475 U.S. at 648. Advent has agreed that it is bound to arbitrate, but the validity of such an agreement cannot arise out of a broader contract if no broader contract ever existed. This is, however, precisely Advent's position. Because Advent submits that there is no underlying agreement, if arbitration is to be compelled, one has to look elsewhere for a binding agreement between the parties to go to arbitration. Cf. Par-Knit Mills, 636 F.2d at 55 ("An

_____

6. Advent does make the argument that the JVA should be viewed as "voidable" because Advent possessed the power to avoid the agreement through refusal to ratify. But this is a merits argument regarding the fundamental issue of whether the parties formed a binding arbitration agreement.

16

unequivocal denial that the agreement had been made, accompanied by supporting affidavits . . . in most cases should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds.") (quotation and citation omitted).

Advent contends that, because it does not challenge the arbitration clause, we need look no further for an agreement to arbitrate. It contends that the arbitration clause can be separated from the main agreement under the Prima Paint doctrine. But Advent's fundamental position, that Huep lacked the authority to bind the company, is at odds with this claim. The validity of the arbitration clause as a contract, which the District Court must determine prior to ordering arbitration, derives from Huep's authority to bind Advent. Therefore, there does not appear to be any independent source of the validity of the arbitration clause once the underlying contract is taken off the table. If Huep's signature is not binding, there is no arbitration clause.

To be sure, Advent argues strenuously that the District Court could not consider the narrow form of this issue-- that is, did Huep bind Advent to the arbitration clause in isolation from the JVA as a whole--because Advent did not contest arbitrability. The FAA speaks, however, of the court's need to be satisfied that there is no issue of whether the arbitration agreement was made. See 9 U.S.C. S 4. Moreover, the issue is contested. By claiming that Huep's signature, which was to the JVA as a whole and not a specific clause, is non-binding, Advent is the one that has placed the existence of the arbitration clause in dispute.

To hold otherwise would be to assume the existence of a contract without consideration. If Advent did not bind itself to the JVA through Huep's signature, as it contends, when did it promise to go to arbitration? What is its consideration for Sandvik's promise to do the same? Advent has not directed us to any place outside of the JVA for answers. This observation is not at odds with the Prima Paint severability doctrine. There is no doubt that agreements to arbitrate can be deemed to be valid contracts severable from a larger contract if these agreements are recognized as meeting the conditions of contract formation. See Sauer-

17

Getriebe KG v. White Hydraulics, 715 F.2d 348, 350 (7th Cir. 1983) ("The agreement to arbitrate and the agreement to buy and sell . . . are separate. [Plaintiff 's] promise to arbitrate was given in exchange for [defendant's] promise to arbitrate and each promise was sufficient consideration for the other."). It is also true that when arbitration clauses are embedded within a larger contract, there is no need to search for mutuality in the arbitration clause specifically if there is consideration beyond the promise to arbitrate. See Harris v. Green Tree Fin. Corp., 183 F.3d 173, 180–81 (3d Cir. 1999). But Advent claims to have never elected to be bound by the document that memorializes the agreement to arbitrate. Moreover, it denies that the act evincing a promise to be bound, Huep's signature, was legally binding. But it is Huep's signature that would have bound Advent to the arbitration clause. In short, Advent seeks not to sever the arbitration clause but rather to make the acts of its agent simultaneously binding and non-binding.

In effect, therefore, Advent seeks to concede a consequence of Sandvik's fundamental position in the controversy without accepting the bitter with the sweet. A hypothetical illustrates the problematic nature of Advent's position. Suppose A sues B to perform a sales contract that covers multiple anticipated transactions between the parties, and B defends on the grounds that it never signed the agreement. Suppose further that one particular sale in the agreement, when considered in isolation from all the other transactions covered by the contract, is very favorable to B. Barring some independent manifestation of assent from the parties, no court would allow B to assert that it never signed the contract while requesting enforcement of the one favorable sale. In a sense, however, that is what Advent would have the District Court do in this matter. Cf. In re Pollux Marine Agencies, Inc., 455 F. Supp. 211, 219 (S.D.N.Y. 1978).

Because the legal status of the arbitration clause is unresolved, Advent's desire to arbitrate, separate from the contract, appears as a desire, floating in the legal ether untethered by either reciprocal promises or other sufficient consideration. Only a ruling on the effect of Huep's signature can ground Advent's wishes in the firmament.

18

Otherwise, Advent's desire to go to arbitration is little more than an offer to resolve the underlying dispute in a forum other than the District Court. For there to be a binding contract, it is not enough that Advent and Sandvik each agree at independent points in time that arbitration would occur; there must be a contract to do so. It is not enough to ask that the District Court "assume" that such an agreement exists; the language of the FAA affirmatively requires the court to be "satisfied" that the arbitration agreement's existence is not at issue. See 9 U.S.C. S 4.

In contrast, Sandvik's fundamental position is not similarly at war with itself. Sandvik maintains that the underlying contract is valid, but asserts that the validity of the arbitration clause must first be found by the District Court before the matter can be referred to the arbitrators. This argument does not require Sandvik to make any evidentiary proffers that are opposed to its underlying position in the controversy. As stated above, the FAA requires the District Court to affirmatively conclude that an agreement to arbitrate exists. Therefore, Sandvik need not deny the arbitration clause; rather, Advent's denial of the underlying agreement and its failure to demonstrate how the arbitration agreement exists if Huep lacked authority to bind Advent places the clause's validity in dispute.

D.

This Court's jurisprudence supports distinguishing between void and voidable contracts.7 First, as discussed above, this distinction reconciles our ruling in Par-Knit Mills, which impliedly makes the void/voidable distinction, with the Prima Paint severability doctrine. Second, we have recognized the distinction between contracts that are voidable due to fraud in the inducement, the claim at play in Prima Paint, and those that are simply void. We explained in another context:

> As stated by the Court of Appeals for the Ninth Circuit, the distinction between fraud in the inducement and

---

7. Of course a "void" contract is no contract at all. See Restatement (Second) of Contracts S 7 cmt. a (1981).

19

fraud in the execution is that, "[t]he former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is." [Southwest Adm'rs, Inc. v.] Rozay's Transfer, 791 F.2d [769,] 774 [(9th Cir. 1986)] (citing 12 Walter H.E. Jaeger, Williston on Contracts S 1488, at 332 (3d ed. 1970)). The court went on to explain that, " `[f]raud in the execution' arises when a party executes an agreement `with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.' ... Fraud in the execution results in the agreement being void ab initio, whereas fraud in the inducement makes the transaction merely voidable." Id. (quoting U.C.C. S 3-305(2)(c)) (other citations omitted).

Connors v. Fawn Mining Corp., 30 F.3d 483, 490 (3d Cir. 1994); see also Associated Hardware Supply Co. v. Big Wheel Distrib. Co., 355 F.2d 114, 120 (3d Cir. 1966) ("[T]he fraud alleged here is fraud in the inducement. It does not render the transaction void, but only voidable. Traditionally, a person so defrauded has recourse against the fraudulent party through either of two courses of action. He may rescind the transaction--tendering back what he has received and suing for what he has parted with --or he may affirm the transaction and maintain an action in deceit.") (citation omitted).8 Nothing in Prima Paint is to the contrary.9

_____

8. The distinction between fraud in the inducement and fraud in the factum or execution of the contract has been discussed in the arbitration context in other courts of appeals. Compare Concanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998, 999-1000 (11th Cir. 1986) (per curiam) (no arbitration when fraud in the execution of the contract is alleged), with C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp., 912 F.2d 1563, 1567 (6th Cir. 1990) (rejecting fraud in factum/inducement distinction). Here, of course, the relevant allegation is not about fraud, but rather about never having entered into any contract whatsoever.

9. The dissenting opinion in Prima Paint does imply that the majority in that case rejected the void/voidable distinction."The Court here holds that the United States Arbitration Act . . . compels a party to a contract

20

Our holding also comports with the text of the CREFAA, which, as discussed above, allows a court of a signatory nation to refrain from referring parties to arbitration if it finds that the agreement to arbitrate is "null and void, inoperative or incapable of being performed." CREFAA Art. II S 3.

E.

We also do not find persuasive Advent's proffered alternative rule that would draw a distinction between cases in which the party resisting arbitration is suing to enforce the underlying agreement and those in which it denies the entire agreement.10 Advent relies largely on Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir. 1990). In that case two parties to a distributorship agreement, Teledyne and Kone, signed a negotiated document clearly labeled "DRAFT (to be finalized by KONE legal department)," which contained an arbitration clause. After a breakdown in relations ensued, Teledyne sued. Teledyne brought several claims, among them the contention that Kone had denied that the signed draft was an enforceable contract.

_____

containing a written arbitration provision to carry out his `arbitration agreement' even though a court might, after a fair trial, hold the entire contract--including the arbitration agreement-- void because of fraud in the inducement." Prima Paint, 388 U.S. at 407 (Black, J., dissenting) (emphasis added). In our view, this dissent offers no persuasive reasons for abandoning the view we have taken. First, of course, the statement is in a dissent, while the case's holding dealt strictly with fraud in the inducement of the larger contract and made no broader pronouncements regarding "void" agreements. Second, the wording of the quoted passage indicates that though the Prima Paint dissent employed the term "void," it actually meant "voidable" in the sense used by the Restatement and our precedent quoted above, as fraud in the inducement is a grounds for voiding a previously valid contract and not forfinding that no contract had ever been made.

10. Advent concedes some exceptions to its rule, such as when the contract in issue was never signed. See Appellant's Reply Br. at 6 n.4. Advent does not explain, however, what distinguishes unsigned contracts from contracts signed by agents who lack the authority to bind their principals.

21

The district court dismissed the complaint because of the draft agreement's arbitration clause. See id. at 1406. On appeal, Teledyne argued, much as Sandvik does here, that Kone could not enforce the arbitration provision when it denied the existence of the entire contract in which it resides. The court rejected the claim based on the same severability grounds that Advent urges upon us."Kone has argued that the 1986 Draft was never finalized. It has attacked the contract as a whole without making an `independent challenge' to the arbitration provision. It has thus not waived its right to have an arbitrator determine whether the 1986 Draft was finalized." Id. at 1410.

The Teledyne court expressed the view that the position maintained by Sandvik in the current dispute raises the potential for absurd results. It reasoned that if a district court were to find the underlying contract valid, it would then find the arbitration clause valid, which would mean that the matter would not belong in federal court at all. See id. We conclude that this characterization is too facile. There is no "absurdity" in allowing the district court to rule on the threshold question whether the arbitration clause is binding when one of the parties has implicitly denied it ever consented to arbitrate, even if the answer bears on the question whether the larger contract existed. If the court declares that such a contract existed or otherwisefinds that the arbitration clause is binding, arbitration would then be ordered on all issues arising within the scope of the arbitration clause, and the District Court would not grant Sandvik any further relief. It is true that the arbitrators in such a case could possibly be placed in a position of arbitrating a dispute in which an American court has already implicitly declared one party to be incorrect.11 The issues that arise from such a circumstance are not, however, before this Court. In any event, the District Court would neither be granting Sandvik relief nor ruling whether Advent breached a contract, but rather making a narrow legal ruling on the existence and scope of an agreement to arbitrate. It may be true that this ruling implicates the legal
_____

11. Of course there would not be any prejudice to Advent's ability to assert to the arbitrators its right to avoid the contract under defenses such as fraud in the inducement or the like.

effect of Huep's signature, and that this is a prerequisite to Sandvik's obtaining concrete relief on the larger contract. Given the scope of such a ruling, however, it is not a sufficient condition for Sandvik to prevail on its contract claims.

Insofar as Sandvik's position leads to an "absurdity," it is no greater than the one urged by Advent, for there is also something odd about referring this matter to arbitrators without a definitive conclusion on the issue whether an agreement to arbitrate actually existed. Were we to order the District Court to compel arbitration and were the arbitrators ultimately to decide that Huep's signature did not bind Advent, they will have effectively decided that they had no authority to arbitrate the dispute. Such a ruling would, however, allow the arbitrators to determine their own jurisdiction, something that is not permitted in the federal jurisprudence of arbitration, for the question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.") (citation and quotation omitted, alteration in the original); AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 651 (1986) ("It was for the court, not the arbitrator, to decide in thefirst instance whether the dispute was to be resolved through arbitration."). Such an approach would impair the District Court's ability to determine whether the dispute that is urged for arbitration falls within the scope of the contract's arbitration clause.

Finally we note that our ruling does not preclude contracting parties from taking steps to ensure that disputes of the nature before us today are arbitrated. In this matter, one of the Advent Funds and Sandvik entered into a pre-contractual Letter of Intent that provided that Sandvik would refrain from entertaining bids from other prospective purchasers while Advent conducted due diligence review of Sandvik's records. This agreement did not contemplate arbitration in the event that a dispute arose over whether the final sales agreement was actually

23

consummated, but we see no reason why parties may not elect to bind themselves to such agreements. Our ruling today does not foreclose future negotiating parties from electing to enter pre-agreements to arbitrate disputes arising out of efforts to negotiate future contracts. Cf. Virginia Carolina Tools v. Int'l Tool Supply, Inc. , 984 F.2d 113, 117 (4th Cir. 1993) ("[P]arties may of course provide by contract for arbitration even of arbitrability issues.") (citing AT&T Techs., 475 U.S. at 649). We hold only that when the very existence of such an agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists.

The order of the District Court denying the motion to compel arbitration will be affirmed.

A True Copy:
Teste:

  Clerk of the United States Court of Appeals
  for the Third Circuit

24