Herbert SADLER, Plaintiff,

v.

WILLIAM CHEVROLET/GEO,
INC., et al., Defendants.

No. 04 C 383.

United States District Court,
N.D. Illinois,
Eastern Division.

March 2, 2004.

Adam J. Krohn, Krohn & Moss, Ltd., Chicago, IL, for Plaintiffs.

Scott W. Fowkes, Bevin M. Brennan, Kirkland & Ellis LLP, Lawrence W. Byrne, Byrne, Nadborne & Assocs., Chicago, IL, for Defendants.

## MEMORANDUM ORDER

SHADUR, Senior District Judge.

This Court's February 27, 2004 memorandum order ("Order")(1) granted the motion of one codefendant—General Motors Acceptance Corporation ("GMAC")—for its dismissal pursuant to Fed. R.Civ.P. 12(b)(6) and (2) concluded by stating that this Court was reviewing the situation as to the motion filed by the other codefendant—William Chevrolet/GEO, Inc. ("William Chevrolet")—to stay these proceedings and to compel arbitration in accordance with the July 11, 2003 Arbitration Agreement ("Agreement") that had been entered into contemporaneously with the purchase by plaintiff Herbert Sadler ("Sadler") of a 2003 Chevrolet Impala from William Chevrolet. That review has now been completed, and this memorandum order explains why William Chevrolet's motion should be and is granted as well.

As just suggested, the Agreement was one of several documents that were signed by the parties on July 11, 2003. Unlike the specific purchase documents as to the Chevrolet Impala, which Sadler challenges as having been tainted by fraud,[1] *no* alle-

---

1. For purposes of the present motion this Court accepts Sadler's allegations as true. In that respect Complaint ¶ 6 says that he signed

the Retail Installment Contract and Vehicle Sales Order in blank, and Complaint ¶ 7 says that he then left the dealership with the purchased vehicle. Next Complaint ¶ 8 alleges that when Sadler returned to the dealership later on the same day, the two blanks in the two contracts had been filled in, but Complaint ¶ 9 asserts that in doing so the William

gations are made as to there having been any independent fraudulent inducement of the Agreement. Nor does Sadler assert that the Agreement was never entered into—nor could he for that matter, for the Agreement not only bears his signature but also carries his initials in two paragraphs calling for them (those paragraphs set out specific purchaser acknowledgments, so that the initialing provides express confirmation of the acknowledgments contained in those paragraphs). Instead Sadler's initial Resp. Mem. 5–8 [2] urges that the Agreement and the other documents executed as part of the single purchase transaction must be considered together. So much is true, but for reasons explained hereafter that general principle does Sadler no good on the present motion.

What has just been said as to the Agreement—a contract expressly calling for arbitration in the broadest possible terms—brings this case squarely within the purview of *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *Prima Paint, id.* at 403–04, 87 S.Ct. 1801 (footnotes omitted), which like this case dealt with the application of the Federal Arbitration Act ("Act," 9 U.S.C. §§ 1–16), said:

> Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the

agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. Section 4 does not expressly relate to situations like the present in which a stay is sought of a federal action in order that arbitration may proceed. But it is inconceivable that Congress intended the rule to differ depending upon which party to the arbitration agreement first invokes the assistance of a federal court. We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

And *Prima Paint, id.* at 406, 87 S.Ct. 1801 then upheld the lower courts' stay of the action pending the arbitration of one party's attack on the underlying contract as fraud-induced, stating:

> In the present case no claim has been advanced by Prima Paint that F & C fraudulently induced it to enter into the agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof."

Thus *Prima Paint* stands for the proposition that unless the arbitration agreement *itself* is independently tainted by fraud, the parties must go to arbitration to resolve the type of question presented here: whether the parties' *substantive*

Chevrolet people had upped the purchase price by fully 50%—from $22,000 to $33,930.

2. Sadler's counsel has inexplicably failed to number the pages of his Response Memorandum. This Court has done so for convenience in referring to that filing.

agreement is so tainted. Correctly anticipating the need to get around *Prima Paint,* Sadler's counsel urges (Resp.Mem.4–5) that the lengthy three-Justice dissent in that case authored by Justice Black, which pungently challenges the majority holding as "fantastic" (*id.* at 407, 87 S.Ct. 1801), has the better of the argument.

Indeed, if this Court had the absolute freedom to write on its own, with the ability to disregard what the Supreme Court has held (as of course it cannot), it would agree. It indicated as much by way of dictum in *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 803 F.Supp. 1358, 1359 (N.D.Ill.1992), a case in which it followed decisions in the Second and Ninth Circuits to distinguish *Prima Paint* and thus to deny arbitration in the situation before it. But in reviewing that ruling our Court of Appeals (1 F.3d 639 (7th Cir.1993)), although it characterized this Court's opinion as "careful" (*id.* at 640) and its "reasoning to be challenging" (*id.* at 641–42), resolved "this puzzling matter" (*id.* at 640) by finding that *Prima Paint* controlled (*id.* at 641 n. 4):

> In other words, a court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud.

Apart from expressing his disagreement with the *Prima Paint* holding (a disagreement that obviously carries no persuasiveness), Sadler's counsel advances two basic arguments for opposing the stay in favor of an initial determination by this Court:

1. Resp. Mem. 3 points to language in the Illinois version of the Uniform Arbitration Act (710 ILCS 5/2) and in two Illinois Appellate Court opinions, all of which call for a judicial determination of whether an agreement to arbitrate exists.

2. Resp. Mem. 4–5 urges that the post-*Prima Paint* Supreme Court decision in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) has sapped *Prima Paint* of vitality.

Neither of those contentions can carry the day.

As to counsel's first argument, there is absolutely no predicate for relying on the language in the Illinois arbitration statute that calls on state courts to determine the issue "if the opposing party denies the existence of the agreement to arbitrate"—language that has no counterpart in the Act. On that score counsel has chosen to ignore the express provision of Agreement ¶ 13 that looks to the Act for the rules of decision:

> This agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

Moreover, even were that not the case, any such argument would fail on its face in any event. After all, there is no question here as to the *existence* of the agreement to arbitrate—instead the dispute has to do with the enforceability of the Agreement, the very issue as to which *Prima Paint* speaks directly.

 As for counsel's second contention, which calls into question the impact (or lack of impact) of *First Options* on the *Prima Paint* doctrine, counsel's position ignores the way in which responsible Courts of Appeals have accommodated those two Supreme Court decisions. In the Third Circuit[3] that has taken the form

---

**3.** Ordinarily this Court would of course first address the treatment accorded the issue by the Seventh Circuit. Its reason for citing the Third Circuit decisions up front instead is that they have announced a bright line rule—one dependent on the contrast between voidness per se and voidability—that is a bit easier to apply. But precisely the same conclusion flows from the well-reasoned opinion by our

of distinguishing between contentions that an arbitration agreement (or an arbitration clause that forms a part of a larger agreement) is void—something that must be resolved by the court rather than arbitrators—and a contention of the arbitration agreement's voidability, as to which the still-viable distinction made by *Prima Paint* controls (see *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106–07 (3d Cir. 2000), adhered to in *China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*, 334 F.3d 274, 282 (3d Cir.2003)).

In a decision that is closer to home (and that is controlling on this Court), our own Court of Appeals has examined *Prima Paint* and *First Options* and has parsed them in a fashion that brings this case squarely within the *Prima Paint* doctrine (*Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590–91 (7th Cir.2001)). In that regard the broad language of the arbitration clause that led to the stay in *Prima Paint* is matched by the terms of Agreement ¶¶ 1 and 2 in this case:

1. Any disagreements, litigation, disputes, arising out of the purchase, service, ownership, financing, or other matters related to the car shall be resolved through binding arbitration at the American Arbitration Association through a single arbitrator.

2. The parties agree to enter binding arbitration relative to all issues related to any claim, including but not limited to the following: Warranty Claims; Consumer Fraud Act Claims; Magnuson Moss Act Claims; Truth-in-lending claims; Common Law and Statutory Law claims or whether or not a dispute is subject to binding arbitration under this agreement.

One final point is worth addressing briefly: Sadler's earlier-mentioned contention that the Agreement must be considered together with the other sale documents that Sadler has challenged on the ground referred to earlier. But even if that position were carried to its ultimate extreme, with all the documents (including the Agreement) viewed as though they together formed a single contract, Sadler would still be no better off than under *Prima Paint*, where the arbitration clause was in fact part of the total agreement.

It will be recalled that in that situation *Prima Paint* said that alleged fraud in the inducement as to the total agreement would not suffice to vitiate the arbitration provision where no independent contention was made that *it* was similarly induced by fraud. And the same was true of the contracts at issue in the two Third Circuit cases and in the Seventh Circuit case discussed above. Indeed, even if this Court were to buy the state law concept that the documents should be "considered together and construed with reference to one another" (the language of *Tepfer v. Deerfield Sav. & Loan Ass'n*, 118 Ill.App.3d 77, 80, 73 Ill.Dec. 579, 454 N.E.2d 676, 679 (1st Dist.1983) quoted at Resp. Mem. 6), the further fact that the Agreement in this instance is a *separate* document that Sadler indisputably signed and initialed calls for the result here to flow a fortiori from *Prima Paint.*

*Conclusion*

Act § 3 controls. Sadler and William Chevrolet are ordered to proceed to arbitration in accordance with the Agreement, and this action is stayed pending the completion of such arbitration. For the sole purpose of maintaining this action in an active status on this Court's calendar, 9 a.m. June 9, 2004 is set as a next status hearing date. If the arbitration ordered here has not been completed by then, either party may so notify this Court's minute clerk and the status date will be ex-

own Court of Appeals cited in the next para- graph of the text.

tended without any need for the parties to appear, while if the arbitration is completed before that date, either party may promptly move to enforce the award pursuant to Act § 9.