**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1774
_____

PEI CHUANG

v.

OD EXPENSE LLC; REGENERATION CAPITAL GROUP LLC;
ALTBACHO LLC; RICHARD KAUFMAN,

Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(No. 1-16-cv-00915)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 19, 2018

Before:  GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*

(Opinion filed: August 1, 2018)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Defendant-Appellants Richard Kaufman, Regeneration Capital Group, LLC, Altbacho, LLC, and OD Expense, LLC, appeal the District Court's denial of their motion to compel arbitration and stay the action brought by Plaintiff Pei Chuang. For the following reasons, we will affirm.

I.

Because we write only for the parties, we discuss only those facts necessary to our disposition.

In 2013, Kaufman persuaded Chuang to enter into two agreements ostensibly regarding an "investment opportunity" in a Chinese corporation, Oriental Dragon Corporation.[1] Chuang believed he purchased pre-initial public offering shares in Oriental Dragon. In reality, Chuang obtained shares of a different company, OD Expense, LLC, under much different terms than those to which Chuang alleges he agreed.

The first agreement, a Class C Membership Interest Subscription Agreement (the "Subscription Agreement"), was executed by Kaufman, acting on behalf of OD Expense. The Amended and Restated Operating Agreement of OD Expense, LLC, (the "Operating Agreement") was attached to this agreement. The second agreement, a Supply of Consulting Services Agreement (the "Supply Agreement"), was executed by Kaufman, acting on behalf of non-party Regeneration Capital Group LLC Shanghai Office ("Regeneration Shanghai"). Thereafter, Chuang wired $100,000 to OD Expense, under the

---

[1] A23.

terms of the Subscription Agreement, and $298,000 to Regeneration Shanghai, under the terms of the Supply Agreement. Chuang does not know and does not allege a relationship between Regeneration Shanghai and any of the Defendant-Appellants.

The Operating Agreement, attached to the Subscription Agreement, states, "Except as otherwise provided in this Agreement, any dispute arising out of this Agreement shall be submitted to the American Arbitration Association for resolution."[2] The Operating Agreement separately states that "Each Member agrees to submit to the *exclusive jurisdiction* of the federal and state courts of the State of Delaware in *any action arising out of a dispute under or in connection with this Agreement or any transaction contemplated by this Agreement*."[3]

The Supply Agreement requires the parties to attempt to resolve any dispute through good faith negotiation. It then requires the parties to submit the dispute to the China International Economic and Trade Arbitration Commission.

Chuang was eventually informed that no initial public offering would occur. Chuang sued the Defendant-Appellants in the District Court for the District of Delaware on October 7, 2016, to recover the $398,000 he provided. He alleges, based on Oriental Dragon's quarterly report for the quarter ending September 30, 2013, that his funds were used to satisfy Regeneration Capital Group's preexisting expense obligations to Oriental Dragon. He also alleges that Kaufman made several misleading statements to induce him

---

[2] A69.
[3] *Id.* (emphasis added).

to sign the agreements.  The Defendant-Appellants moved to compel arbitration and stay the action under the Federal Arbitration Act.[4]

On March 22, 2017, the District Court denied the motion to compel and stay the action.  It held that the arbitration clause of the Supply Agreement, between Chuang and Regeneration Shanghai, could not be enforced by Defendant-Appellants against Chuang. It held that the arbitration provision of the Operating Agreement, between Chuang and OD Expense, was ambiguous, and interpreted it against the provision granting exclusive jurisdiction to the courts of Delaware.  It concluded that the Operating Agreement did not prohibit Chuang from bringing his action in the District Court for the District of Delaware. It further held that the Supply Agreement was not incorporated into the Subscription Agreement, to which OD Expense was a party.  This appeal followed.

## II.

Because Defendant-Appellants were not party to an agreement with Chuang that would preclude his lawsuit, we will affirm the District Court.

We review the District Court's order denying the motion to compel arbitration and stay the action de novo.  We exercise "plenary review over questions regarding the validity and enforceability of an agreement to arbitrate."[5]  We must decide whether a motion to dismiss or a summary judgment standard should apply to the question of whether "an agreement to arbitrate was actually reached."[6]  Because this matter can be

---

[4] 9 U.S.C. §§ 3–4 (2012).

[5] *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010).

[6] *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013).

decided on the face of the contracts and because no dispute supported by the record exists as to the agreements, the parties to those agreements, or the relationships between the parties to the agreements and the non-party Defendant-Appellants, we will decide this case under the motion to dismiss standard of Federal Rule of Civil Procedure 12(b)(6).[7] Under that standard, we will find for the movant "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint."[8]

It is "well-settled" law of this Court that "nonsignatory agents may invoke a valid arbitration agreement entered into by their principal."[9] Similarly, non-signatories may invoke equitable estoppel to prevent "a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."[10]

The Operating Agreement, although it contains an arbitration provision, does not prohibit Chuang from bringing the action that is on appeal here. This Court has held that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in

---

[7] *See id.* at 776.
[8] *Id.* at 772 (quoting *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009)).
[9] *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 224 (3d Cir. 2007) (citing *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938-39 (3d Cir. 1985), *overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1115 n.5 (3d Cir.1993)).
[10] *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202 (3d Cir. 2001) (emphasis omitted) (quoting *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

5

court, there should be an express, unequivocal agreement to that effect."[11] The Operating Agreement provides for arbitration only where it does not allow for litigation. Section 11.8 of the Operating Agreement explicitly contemplates litigation, mandating that "any action arising out of a dispute under or in connection with this Agreement" be brought in the courts of Delaware, without reference to the arbitration provision.[12] We cannot give the arbitration provision its plain-meaning effect without rendering Section 11.8 superfluous, and therefore the provision is ambiguous and cannot be enforced as written.

The interpretation that Chuang urges—that Section 11.8 permits litigation—is reasonable. We will not read into the contract an additional term, which is what Defendant-Appellants propose when they argue that Section 11.8 is limited to actions to enforce or vacate arbitration awards. The Operating Agreement does not bar this suit.

The Supply Agreement binds Chuang to arbitrate claims against Regeneration Shanghai, which is not a party to this action. The Defendant-Appellants seek to enforce this provision as non-signatories under a theory that they acted as agents of Regeneration Shanghai and are therefore entitled to avail themselves of the Supply Agreement's arbitration provision. However, they make no showing of an agency relationship between themselves and Regeneration Shanghai aside from Kaufman's name on behalf of Regeneration Shanghai on the Supply Agreement's signature page. This, absent more, is insufficient given the inferences we must draw in favor of the non-moving party.

---

[11] *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106 (3d Cir. 2000) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).
[12] A69.

They further argue that Chuang should be equitably estopped from avoiding arbitration with them because his claims are intertwined with the Supply Agreement. They are not. Chuang's claims concern the Defendant-Appellants' conduct in inducing him to sign the agreements. They would be identical were the terms of the Supply Agreement different in any and every way. This cannot bring his claims within the Supply Agreement's arbitration provision.

Finally, the Supply Agreement is not incorporated into the Subscription Agreement such that parties to that agreement can avail themselves of the Supply Agreement's arbitration provision. The Supply Agreement is mentioned only in the recitals of the Subscription Agreement, and there is no clause providing for incorporation by reference. That alone is not dispositive,[13] but on the record before us concerning the Subscription Agreement and its formation, there is no evidence to support an intent to incorporate the Supply Agreement by reference. Because there is no arbitration provision that can be invoked against Chuang by Defendant-Appellants that would bar his suit, Defendant-Appellants cannot compel arbitration.

For the foregoing reasons, we will affirm the order of the District Court.

---

[13] *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) (holding that clear intent to incorporate by reference suffices where there is no express incorporation-by-reference provision).

7