### AMERICAN MEDICAL TECHNOLOGIES, INC., Appellant,

v.

### John A. MILLER, Appellee.

### In re American Medical Technologies, Inc.

Nos. 14–03–01097–CV, 14–03–01106–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 28, 2004.

Robert L. Ketchand, and Jennifer G. Black, Houston, for relator in No. 03-01106-CV.

Bradley Roger Gammell and Kenneth Sup Soh, Houston, for respondent in No. 03-01106-CV.

Robert L. Ketchard, James J. Hansen, Houston, for appellants in No. 03-01097-CV.

Bradley Roger Gammell, Houston, for appellees in No. 03-01097-CV.

Panel consists of Justices FOWLER,

EDELMAN, and SMITH.*

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

### I. INTRODUCTION

John A. Miller sued American Medical Technologies, Inc. ("AMT") for benefits allegedly due under an employment agreement. AMT moved to compel arbitration based on the agreement while also claiming there was no valid employment agreement. The trial court denied AMT's motion. AMT filed an interlocutory appeal and a petition for mandamus, alleging in both that the trial court erred in denying AMT's motion to compel arbitration.

We are asked to resolve two questions. First, what is the proper procedural posture for this arbitration dispute—is it governed by the Federal Arbitration Act and resolved by mandamus, or is it governed by the Texas General Arbitration Act and resolved by appeal? Second, did the trial court correctly refuse to refer the case to arbitration?

We hold that the alleged employment agreement affects interstate commerce and is governed by the Federal Arbitration Act because it provides for the transfer of stock options to Miller. We also hold that the trial court correctly refused to refer the case to arbitration because AMT did not satisfy its burden to demonstrate the existence of a valid arbitration agreement, and because issues raised in the trial court questioning the validity of the employment agreement did not implicate the separability doctrine and therefore did not require referral to an arbitrator. In short, based on the evidence before it, the trial court correctly denied AMT's motion to compel arbitration. In light of these holdings, we dismiss AMT's interlocutory appeal for lack of jurisdiction and deny AMT's petition for mandamus.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In August of 2002, Miller and AMT allegedly entered into an employment agreement. The alleged agreement contained terms governing benefits due upon termination or resignation. It also contained a clause stating that "any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration...."

The parties dispute how Miller's employment with AMT ended. Miller alleges that he resigned. AMT alleges that Miller was terminated for cause. In any event, after Miller's employment ended, AMT's president wrote a letter to Miller stating that the employment agreement was not valid, and that Miller was therefore not entitled to the severance benefits provided by the contract. AMT's president offered alternate benefits in exchange for executing a severance agreement and release, which Miller declined to accept. Shortly after that, Miller sued AMT, seeking damages for breach of the employment agreement.

Based on an arbitration provision in the alleged employment agreement, AMT moved to stay the proceedings and compel arbitration. In support of its motion, AMT attached a copy of the alleged employment agreement between it and Miller. The trial court denied the motion and this interlocutory appeal and petition for mandamus followed.

## III. ANALYSIS

As we previously noted, AMT's consolidated mandamus and appeal require us to address two issues: (1) whether the Fed-

* Senior Justice Jackson B. Smith, Jr. sitting by assignment.

eral Arbitration Act or the Texas General Arbitration Act governs this arbitration dispute, and therefore whether it is appropriately resolved by mandamus or appeal; and (2) whether the trial court erred in refusing to compel arbitration when AMT attached a signed copy of the alleged employment agreement to its motion to compel. We address each in turn.

### A. The FAA Governs this Case

■ The appropriate avenue for relief for denial of arbitration under the Texas General Arbitration Act ("TGAA") [1] is an interlocutory appeal, whereas the appropriate avenue for relief for denial of arbitration under the Federal Arbitration Act ("FAA") [2] is a petition for mandamus. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). Therefore, to determine the proper procedural posture of this dispute, we must first determine whether the TGAA or the FAA applies.

■ The alleged employment agreement does not specifically invoke either the TGAA or the FAA. It does provide that it is to be "governed by and construed in accordance with the laws of the State of Texas," but this language does not preclude the application of federal law. *See Capital Income Properties–LXXX v. Blackmon,* 843 S.W.2d 22 (Tex.1992) ("The [FAA] is part of the substantive law of Texas."). For the FAA not to apply, an agreement must specifically exclude the application of federal law. *In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 127–28 (Tex.1999).

■ Under the Supremacy Clause of the United States Constitution, the FAA preempts otherwise applicable state laws, including the TGAA. *Jack. B. Anglin,* 842 S.W.2d at 271. Federal law governs whether a party has a right to arbitrate under the FAA. *Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995). The FAA applies to all disputes in state or federal court arising out of a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (1999); *Jack B. Anglin,* 842 S.W.2d at 269–70. A contract evidences a transaction involving commerce if the contract affects interstate commerce. *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 276–77, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *In re Merrill Lynch Trust Co. FSB,* 123 S.W.3d 549, 553 (Tex.App.-San Antonio 2003, orig. proceeding); *see* 9 U.S.C. § 1 (defining "commerce" as "commerce among the several States ...."). We must therefore determine whether the alleged employment agreement affects interstate commerce.

Agreements that involve the sale of securities have been held to affect interstate commerce. *See In re Whitfield,* 115 S.W.3d 753, 757 (Tex.App.-Beaumont 2003, orig. proceeding.); *Eurocapital Group, Ltd. v. Goldman Sachs & Co.,* 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Thomas James Assocs. v. Owens,* 1 S.W.3d 315, 319 (Tex.App.-Dallas 1999, no pet.). The alleged employment agreement provides for the transfer of stock options to Miller and implies that AMT is listed on the National Association of Securities Dealers Automated Quotation System ("NASDAQ"). We conclude that the transfer of securities as an employment benefit affects interstate commerce in the same manner as an outright sale of securities, and therefore, that the FAA, not the TGAA, applies to the arbitration provision contained in the alleged agreement. *See Whitfield,* 115 S.W.3d at 757; *Eurocapital Group,* 17 S.W.3d at 430; *Thomas James,* 1 S.W.3d at 319. Accord-

---

1. TEX. CIV. PRAC. & REM.CODE § 171.001–.098.

2. 9 U.S.C. §§ 1–16 (1999).

ingly, we dismiss AMT's interlocutory appeal for lack of jurisdiction and instead consider AMT's petition for mandamus.

**B. THE TRIAL COURT CORRECTLY REFUSED TO REFER THE CASE TO ARBITRATION.**

We now turn to the substance of AMT's complaint. AMT presents two reasons the trial court should have referred the case to arbitration. First, it proved a valid arbitration agreement that Miller failed to controvert. Second, even if some question remained regarding the validity of the employment agreement, the separability doctrine required that issue to be resolved by an arbitrator. We address each issue.

**1. AMT did not Satisfy its Burden to Prove the Existence of a Valid Arbitration Agreement.**

■ A trial court is compelled to order arbitration if the parties have a valid arbitration agreement. 9 U.S.C. § 4 (1999). A party moving to compel arbitration must prove (1) the existence of a valid agreement to arbitrate and (2) a dispute that falls within the scope of the agreement. *See Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir.2003); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). Here, the parties agree that their dispute falls within the scope of the agreement to arbitrate. However, they disagree whether AMT conclusively proved that a valid agreement to arbitrate ever existed.

AMT states that it met its burden of demonstrating the existence of a valid

agreement to arbitrate because (a) it "attached the employment agreement, as evidence of the existence of the arbitration provision," and (b) "the arbitration provision was ratified by the Affidavit of [its president]." We will address these claims separately.

**a. Merely attaching a copy of the employment agreement cannot satisfy AMT's burden to prove the existence of a valid arbitration agreement when AMT itself places the existence of a valid agreement in issue.**

■ First, AMT claims it met its burden by attaching the alleged employment agreement to its motion to compel arbitration. However, AMT also stated in the motion that it "reserve[d] the right to assert that the employment agreement [was] not valid" and claimed that Miller was an at-will employee. In a supplement to the motion, AMT attached an affidavit of its president, which also stated that "[t]here are issues in dispute regarding the making of this contract and whether the person who signed it on behalf of [AMT] had authority to enter into this agreement." [3]

In response to the motion, Miller attached the letter he received from AMT. It also claimed that "the [employment agreement] was not executed by an officer with authority to execute such agreements," that the agreement was not approved by AMT's board of directors, and that the agreement was neither valid nor enforceable. [4]

---

**3.** Although the affidavit is missing from the record, both parties agree that it was attached to AMT's supplement and both parties refer to it. AMT also includes a file-stamped copy of the supplement containing the affidavit in the appendix to its appellate brief.

**4.** Although the record reflects that AMT moved to strike the letter because it was a settlement letter, the record does not contain a ruling on the motion as required by Texas

Rule of Appellate Procedure 33.1(a)(2). The trial court merely stated in its order, "After considering the motion, response, arguments of counsel and the other pleadings on file with this Court, the Court DENIES the motion." This order is not sufficiently specific for us to determine whether the objection was sustained or overruled. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 927 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) ("[W]e cannot

On this record, we cannot say that AMT satisfied its burden to demonstrate the existence of a valid arbitration agreement. Although the attached agreement does demonstrate that it contained an arbitration provision, AMT's own position and evidence showed that AMT disputed that a valid agreement ever existed. Moreover, at the hearing on its motion to compel, AMT refused to concede the existence of a valid agreement. Therefore, the trial court could have determined that AMT failed to satisfy its burden to demonstrate the existence of a valid arbitration agreement merely by attaching a copy of the employment agreement to its motion to compel.

**b. AMT cannot ratify only part of the whole agreement.**

■   Second, AMT alternatively claims it met its burden because the affidavit of its president ratified the arbitration provision. In the affidavit, AMT's president states that the "Arbitration Agreement contained in Paragraph 11 of the alleged Employment Agreement has been accepted, ratified and agreed to by [AMT]. [AMT] has demonstrated its acceptance of the Arbitration Agreement by commencing arbitration before the American Arbitration Association. . . ."

AMT argues that it "is entitled to on the one hand ratify the arbitration provision and on the other deny the validity of the employment agreement and portions of it." However, AMT cites no authority to support this argument.[5]   To the contrary, courts have held that a party may not ratify only a selected portion of an agreement. *See Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 757 (Tex.1980) ("Ratification extends to the entire transaction."); *Daugherty v. McDonald*, 407 S.W.2d 954, 958 (Tex.Civ. App.-Fort Worth 1966, no writ) ("To constitute ratification, the ratifying party must intentionally accept and agree to all material terms of the contract."). Nor may a party ratify a contract and subsequently seek to avoid the contract. *Barker v. Roelke*, 105 S.W.3d 75, 84–85 (Tex. App.-Eastland 2003, pet. denied); *Missouri Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex.App.-Austin 2002, pet. dism'd).

Because AMT cannot both accept the arbitration provision and at the same time deny the validity of the rest of the agreement, its purported ratification is without effect and cannot show the existence of a valid agreement to arbitrate.

**2. AMT's Claim that an Employment Agreement Never Existed Made the Issue One for the Trial Court, Not for an Arbitrator.**

We next turn to AMT's contention that all of Miller's defenses to arbitration backfired on him because they implicated the separability doctrine. We disagree that the separability doctrine applies because this case involves a claim that AMT did not reach an agreement with Miller, not that

---

infer from the record in this case that the trial court implicitly overruled or implicitly sustained appellants' objections"). Even if the letter had been excluded, the affidavit of AMT's president—which AMT itself placed in evidence—similarly reflects AMT's position that no valid agreement ever existed because in it AMT's president states that both "the making of this contract" and whether AMT's signatory had authority to bind it are disputed.

**5.**   AMT correctly points out that it is entitled to plead inconsistent defenses, but the case it cites for that proposition does not support its claim that it is entitled to selectively ratify only the arbitration provision of the agreement. *See Houston E. & W.T. Ry. Co. v. De Walt*, 96 Tex. 121, 134, 70 S.W. 531, 537 (1902).

AMT repudiated an existing agreement. We explain below.

### a. The separability doctrine does not apply when the very existence of a contract is called into question.

The separability doctrine was first established in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). There, the Supreme Court addressed whether a party's claim that it was fraudulently induced to sign a contract containing an arbitration clause should be resolved by the court or referred to an arbitrator. The Court held that, under federal law, arbitration clauses are "separable" from the contracts in which they are contained, and therefore when a party's claim of fraudulent inducement is directed to the contract as a whole, rather than the arbitration clause itself, the issue is to be determined by an arbitrator. *See id.* at 403–04, 87 S.Ct. 1801. Consequently, applying what has become known as the "separability doctrine," [6] courts have held that defenses to arbitration such as fraud, lack of mental capacity, or illegality are arbitrable when they are directed to the entire agreement rather than the arbitration provision specifically. *See, e.g., Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir.2002) (lack of capacity); *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir.

1990) (fraud); *Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1162 (5th Cir.1987) (illegality).

Recently, the Fifth Circuit addressed the scope and application of the *Prima Paint* rule and held that when the "very existence of a contract" containing the relevant arbitration agreement is called into question, the court has the authority and responsibility to decide the matter. *See Will–Drill*, 352 F.3d at 218. In *Will–Drill*, the party resisting arbitration claimed no contract existed because the proposed contract was not signed by all of the necessary parties. *Id.* at 215. If accurate, this would mean that no contract—and no arbitration agreement—ever existed. Without an agreement to arbitrate, the arbitrator would have no authority to decide anything. *Id.*

▆▆▆ *Will–Drill* distinguished the more common argument made by a party that does not challenge the existence of a contract, but rather attacks the enforceability of the agreement alleging that the contract is void ab initio or voidable. *Id.* at 218.[7] This type of claim is subject to the separability doctrine contained in *Prima Paint*. Under this approach, "[o]nly if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Id.*; *see also Primerica Life*, 304 F.3d at 472

---

**6.** This doctrine is also commonly referred to as the "severability doctrine." *See, e.g., ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir.2002); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53 (1st Cir.2002). The terms appear to be interchangeable, so we will follow the lead of the Fifth Circuit and use the term "separability doctrine."

**7.** The Fifth Circuit and other circuit courts disagree as to the scope of the separability doctrine. *See Will–Drill*, 352 F.3d at 215 n. 15. Some courts distinguish between void

and voidable agreements in determining whether the separability doctrine applies. *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32 (2d Cir.2001); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir.2000). The Fifth Circuit has rejected this distinction. *See Will–Drill*, 352 F.3d at 215 n. 15; *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 n. 2 (5th Cir.2002). The scope of the separability doctrine is greater under the Fifth Circuit's view, and therefore application of the other rule would not affect our determination.

(holding that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute"). As the *Will–Drill* court explained, the separability doctrine applies only if there was at one time an underlying agreement. *Will–Drill*, 352 F.3d at 218. Although one of the parties may later dispute the continued enforceability of the agreement, the fact that the parties at some time reached an agreement to arbitrate gives the arbitrator the authority to decide if the agreement continues to exist. *Id.* at 218–19.

■ On the other hand, when the parties never reached an agreement to arbitrate, the separability doctrine does not apply; only the existence of an agreement to arbitrate clothes the arbitrator with authority to arbitrate a dispute. *See Will–Drill*, 352 F.3d at 218–19. Courts have held that defenses such as forgery and lack of authority must be resolved by the court, not the arbitrator. *See, e.g., Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 370 (2d Cir.2003) (forgery); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591–92 (7th Cir.2001) (lack of authority); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 111–12 (3d Cir.2000) (lack of authority).

In short, when the very existence of an agreement is disputed, a court, not an arbitrator, must decide at the outset whether an agreement was reached, applying state-law principles of contract. *See Will–Drill*, 352 F.3d at 218–19.[8]

**b. AMT claims the parties never had an employment agreement; that means the separability doctrine does not apply.**

■ Here, AMT disputes the very existence of an agreement.[9] In its motion to compel arbitration, AMT couched its argument as "reserving the right" to assert that the alleged employment agreement is not valid and that Miller was always an at-will employee. Even though federal policy strongly favors arbitration, it only does so when an agreement exists. If the possibility exists that an agreement never was reached, federal policy does not compel referral to an arbitrator until a court has concluded that an agreement to arbitrate did exist. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474–75, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (noting that "the FAA does not confer a right to compel arbitration of any dispute at any time"; it confers only the right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement"); 9 U.S.C. § 4 (directing that the trial court is to order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue").

In short, the crux of AMT's position was that no agreement ever existed between it

---

**8.** This conclusion is also consistent with this court's analysis in *Dewey v. Wegner*, 138 S.W.3d 591, 597–602 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

**9.** On appeal, AMT claims this case does not involve the very existence of an agreement, but rather the "continued validity of an agreement that already exists." *See Will–Drill*, 352 F.3d at 219. It notes that it employed Miller as its vice president for some period of time before he was discharged. However, AMT does not argue that the agreement was in effect for that period of time; AMT merely argues that Miller was an at-will employee that whole time. And, at the hearing on AMT's motion to compel, AMT refused to concede the existence of a valid agreement. This supports, not contradicts, our holding that AMT is attacking the very existence of a contract.

and Miller; the issue was for the court—not an arbitrator—to decide. *Will–Drill,* 352 F.3d at 216–17; *Sphere Drake,* 256 F.3d at 590–91; *Sandvik,* 220 F.3d at 109.

### c. AMT's attempt to distinguish case law does not work.

AMT attempts to distinguish this case from *Will–Drill* and the cases discussed in that opinion.[10] It points out that in those cases the party opposing arbitration denied the existence of a valid agreement, while here, the party opposing arbitration is not denying the existence of the agreement, but has sued to enforce the contract. AMT argues that, under principles of equitable estoppel, a party cannot claim benefits under a contract while simultaneously attempting to avoid the burdens of the contract. *See Washington Mut. Fin. Group, LLC v. Bailey,* 364 F.3d 260, 267 (5th Cir.2004); *see In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 755–56 (Tex.2001) (noting that "a litigant who sues based on a contract subjects him or herself to the contract's terms"). In other words, Miller cannot "have it both ways."

Miller would be guilty of trying to have it both ways if he were attempting to avoid arbitration by claiming the agreement is not valid, while also claiming that he should recover for breach of the agreement. Instead, he claims he is entitled to avoid arbitration until the alleged agreement is established as being valid. This position is not internally inconsistent so as to invoke equitable estoppel. *See Sandvik,* 220 F.3d at 109 (finding that a party's position is not "at war with itself" when the party "maintains that the underlying contract is valid, but asserts that the validity of the arbitration clause must first be found by the District Court before the matter can be referred to the arbitrators").[11]

▪ The rule, simply, is this: If a party claims a valid agreement to arbitrate never existed, the trial court must resolve the issue, regardless of which party brought the issue to the court's attention. *See Will–Drill,* 352 F.3d at 218; *Sandvik,* 220 F.3d at 109.

### d. The Trial Court did not err in denying AMT's motion to compel Arbitration.

In conclusion, although AMT sought to meet its burden to prove the existence of a valid arbitration agreement by attaching a copy of the alleged employment agreement containing the arbitration provision, all other evidence before the trial court questioned the very existence of an agreement between the parties. In addition, at the hearing on its motion to compel, AMT refused to concede the existence of a valid agreement. Given this record, the trial

---

10. A notable exception is *Sandvik,* in which the court was presented with the same situation we are presented with here—"a party suing on a contract containing an arbitration clause resists arbitration, and the defendant, who denies the existence of the contract, moves to compel it." 220 F.3d at 100. The *Will–Drill* court noted that it was not adopting the void-voidable distinction used in *Sandvik. See* 352 F.3d at 215 n. 15. However, the court did approve of the holding in *Sandvik. See* 352 F.3d at 216 & n. 28, 218 ("We agree with those circuits which have included claims that … the agent lacked authority to bind the principle in this category [of cases in which the court must determine whether there is an agreement to arbitrate].").

11. AMT can seek referral to arbitration later, if it so chooses, after it has proved there was a valid agreement to arbitrate. Until then, however, it is AMT that cannot have it both ways. *See Sandvik,* 220 F.3d at 108 ("In short, Advent seeks not to sever the arbitration clause but rather to make the acts of its agent simultaneously binding and non-binding."). It cannot accept the benefits of the employment agreement without simultaneously accepting its detriments.

court could have concluded that AMT failed to satisfy its burden to demonstrate the existence of a valid arbitration agreement. Therefore, the trial court did not err in denying AMT's motion to compel arbitration.

## IV. CONCLUSION

We hold that the FAA applies to the alleged employment agreement and we dismiss AMT's interlocutory appeal.

We also hold that evidence before the trial court raised a question of whether a valid agreement to arbitrate ever existed, which is a matter for the trial court, not an arbitrator, to decide. We deny AMT's petition for writ of mandamus.

EDELMAN, J. dissenting without opinion.