**Affirmed and Opinion Filed January 23, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01412-CV

### GJ PARTNERS, LTD. AND GENE JOYCE, Appellants
### V.
### CIMA CONTRACTORS, LLC, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-03091-2018**

## MEMORANDUM OPINION

Before Justices Bridges, Molberg, and Partida-Kipness
Opinion by Justice Partida-Kipness

In this interlocutory appeal, appellants GJ Partners, LTD (GJP) and Gene Joyce (collectively, the GJ Entities) appeal from the trial court's order denying their motion to compel arbitration. We affirm the trial court's order.

## Background

In March 2018, storms damaged the roof on the GJ Entities' property in College Station, Texas. Appellee Cima Contractors, LLC (Cima) and Joyce executed an Insurance Restoration Master Agreement (Agreement) to repair the roof. Joyce purportedly executed the Agreement on GJP's behalf as GJP's president. The Agreement contains a Dispute Resolution (Arbitration) provision that states:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment

on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Cima alleges it assisted GJP in providing proof of loss to GJP's insurance carrier. The insurance carrier estimated the repairs at $213,579.74 and issued a check to GJP for this amount. According to Cima, GJP was required by the Agreement to accept this amount for the repairs and contact Cima within thirty days of receiving the payment to schedule the repairs. Cima alleges that GJP never contacted Cima to schedule the repairs but indicated to Cima that it was considering a different contractor for the repairs. GJP allegedly also advised Cima that Joyce did not have authority to execute the Agreement and requested a signatory change.

**Procedural History**

Cima filed suit against GJP, alleging that GJP breached the Agreement when it failed to schedule the roof repair after receiving the insurance proceeds for the repair and repudiated its contractual obligations when it requested a signatory change because Joyce was not authorized to execute the Agreement. Cima also sought a temporary injunction pursuant to chapter 65 of the Texas Civil Practice & Remedies Code to enjoin GJP from spending the insurance proceeds during the pendency of the suit. Cima filed its suit in Collin County, Texas, based on the Agreement's venue provision.

GJP filed a motion to transfer venue, arguing the Agreement's forum and venue provisions were inapplicable because GJP was not a party to the Agreement. According to GJP, Joyce did not have authority to execute the Agreement on GJP's behalf. Only GJP's general partner, GJ Management, LLC, had such authority. In his answer, Joyce asserted he lacked mental capacity to execute the Agreement due to treatment of a "progressive nervous system disorder" that impaired his mental faculties.

Cima filed its first supplemental petition, adding Joyce and alleging that Joyce fraudulently misrepresented his authority to bind GJP and seeking damages for Joyce's breach of contract and express warranty.

Cima set its request for injunctive relief for hearing. In response to Cima's notice of hearing, GJP reiterated that it was not a party to the Agreement and had repudiated the Agreement. According to GJP, the Agreement's injunctive remedies, like the Agreement's venue provision, did not apply to GJP as a non-party to the Agreement.

Cima filed a second supplemental petition in which it sought a temporary restraining order preventing GJP from spending the insurance proceeds. Cima alleged that a third-party roofing contractor had submitted a proposed scope of work to GJP, and GJP had informed the contractor that GJP had terminated the Agreement with Cima. At the TRO hearing, GJP reiterated its position that no contract existed between itself and Cima. The trial court entered a temporary restraining order and set the hearing for Cima's request for temporary injunction. The parties later signed an agreed temporary injunction order that required GJP to preserve certain protected funds.

GJP then withdrew its motion to transfer venue, and the GJ Entities filed a motion to compel arbitration under the Agreement's Arbitration provision. The GJ Entities attached a copy of the Agreement as an exhibit to their motion to compel arbitration. This same copy was attached to Cima's response to GJP's motion to transfer venue and supported by the affidavit of Cima's Vice President, Daniel Suster.

Cima filed a response to the GJ Entities' motion to compel arbitration, arguing that the GJ Entities' contract formation defenses preclude arbitration and were never withdrawn by those parties. In support, Cima attached GJP's responses to Cima's requests for admissions and interrogatories in which GJP repeatedly denied the existence of any agreement between itself and Cima on the ground that Joyce did not have authority to execute the Agreement on GJP's behalf.

Cima also attached Joyce's disclosures in which Joyce stated that he did not have capacity to execute the Agreement.

At the evidentiary hearing on the GJ Entities' motion to compel arbitration, Cima offered GJP's discovery responses and Joyce's disclosures into evidence. The GJ Entities did not offer any evidence at the hearing but argued, as they do on appeal, that they implicitly withdrew their contract formation defenses as to the Arbitration provision by withdrawing their motion to transfer venue and filing their motion to compel arbitration. The GJ Entities maintained their defenses as to the remainder of the Agreement. According to the GJ Entities, as long as they did not contest the formation of the Arbitration provision, the doctrine of separability required the trial court to submit the entire dispute to arbitration.

Cima maintained that the GJ Entities had not withdrawn their formation defenses and directed the trial court to numerous places in GJP's discovery responses in which GJP denied any contract between itself and Cima on the grounds that Joyce was not authorized to execute the Agreement on GJP's behalf. Likewise, Cima directed the trial court to Joyce's disclosure that he lacked capacity to execute the Agreement. The GJ Entities did not object to Cima's evidence.

After the presentation of evidence, the trial court found the discovery responses and disclosures admitted into evidence and not subject to withdrawal.

> COURT: Sounds to me like these are judicial admissions that [GJ Entities] simply can't withdraw. And if there's an admission there's no contract, how can you have an arbitration with no contract?"
>
> [GJ ENTITIES]: Well, Your Honor, in regards to that point, . . . if you go to page 44 of our response, we reserve the right to amend those responses as necessary.
>
> COURT: Well, it's too late. I think those are judicial admissions. They've been admitted into evidence.
>
> [GJ ENTITIES]: Well, it very well might be, Your Honor.

The GJ Entities then argued that challenges to the validity of a contract as a whole go to arbitration, while challenges limited to the validity of an arbitration provision are reserved for the courts, and because they were not challenging the Arbitration provision, the court must grant the motion to compel arbitration. The trial court denied GJ Entities' motion to compel arbitration, and this appeal followed. In one issue, the GJ Entities assert that the trial court abused its discretion by denying the motion to compel arbitration.

**Standard of Review**

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), *cert. denied*, __ U.S. __, 139 S. Ct. 184, 202 L. Ed. 2d 40 (2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.*; *see also Sidley Austin Brown & Wood, L.L.P. v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.) (in reviewing denial of motion to compel arbitration, "we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations"). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). There is no abuse of discretion when the court's decision is based on conflicting evidence, some of which reasonably supports the decision. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 709 (Tex. App.—Dallas 2010, no pet.).

**Analysis**

The GJ Entities present two reasons why the trial court should have granted their motion to compel arbitration. First, the GJ Entities argue they had no burden to prove that a valid contract existed between GJP and Cima because the trial court had already found a valid contract in its temporary restraining order. Second, they maintain the separability doctrine required the parties'

–5–

claims and defenses to be resolved by the arbitrator because the GJ Entities withdrew their contract formation defenses as to the Arbitration provision. We address each of the GJ Entities' reasons.

Before a court can compel arbitration, it must first determine that a valid arbitration agreement exists between the parties. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (orig. proceeding); *Phillips v. ACS Mun. Brokers, Inc.*, 888 S.W.2d 872, 875 (Tex. App.—Dallas 1994, no writ). This gateway matter is a question of state contract law. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018); *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 187 (Tex. 2009) (orig. proceeding); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (when deciding whether the parties agreed to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts").

A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims at issue fall within the scope of that agreement. *Henry*, 551 S.W.3d at 115; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (although strong presumption favors arbitration, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists"). "Motions to compel arbitration are ordinarily decided in summary proceedings 'on the basis of affidavits, pleadings, discovery, and stipulations.'" *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied after merits briefing) (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)). However, when a party seeking to compel arbitration provides competent, prima facie evidence of an arbitration agreement, and the party seeking to resist arbitration contests the agreement's existence and raises genuine issues of material fact by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding, the trial court must forgo summary disposition and hold an evidentiary hearing. *Id.*

When the trial court conducts such a "*Tipps* hearing" and thereafter makes a ruling, we review the trial court's findings for legal sufficiency. *Id*.

In a nonjury proceeding when, as here, no findings of fact or conclusions of law are filed or requested, we infer that the trial court made all the necessary findings to support its judgment. *Id*.; *see also Holt Atherton Indus. Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). If the implied findings are supported by the evidence, we must uphold the trial court's judgment on any theory of law applicable to the case. *Kmart*, 510 S.W.3d at 565; *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

When reviewing the evidence for legal sufficiency, we consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally insufficient if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810. Evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id*. at 827. When conducting a review of the legal sufficiency of the evidence, we are mindful that the factfinder was the sole judge of the credibility of the witnesses and weight to be given their testimony. *Id*. at 819.

The GJ Entities argue that they had no burden to prove that a valid contract existed between GJP and Cima because the trial court had already found a valid contract in its temporary restraining order enjoining the GJ Entities from spending the insurance proceeds. That order stated that the dispute was a "contractual matter" and the Agreement was a valid contract entitling Cima to injunctive relief.

The trial court's interlocutory findings do not carry the weight the GJ Entities suggest. The purpose of a temporary restraining order is to preserve the status quo for up to fourteen days until the litigant's application for temporary injunction can be heard. TEX. R. CIV. P. 680. The ultimate merits of the controversy, both legal and factual, are not before the trial court. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.). Consequently, a trial court's interlocutory findings have no bearing on the ultimate merits of the case and are not binding on the trial court's subsequent rulings or our review of the trial court's exercise of discretion. *See id.*; *see also, e.g.*, *Communicon, Ltd. v. Guy Brown Fire & Safety, Inc.*, No. 02-17-00330-CV, 2018 WL 1414837, at *9 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (trial court did not abuse its discretion by denying a temporary injunction based on findings contrary to those in the trial court's order extending a temporary restraining order); *Nw. Dodge, Inc. v. Woody*, No. 01-02-00669-CV, 2003 WL 1848689, at *1 (Tex. App.—Houston [1st Dist.] Apr. 10, 2003, pet. denied) (mem. op.) ("Although the trial court's additional findings and conclusions are in conflict with the original findings and conclusions, the conflict must be resolved in favor of the later findings."). Thus, the trial court's interlocutory findings did not alleviate the GJ Entities' burden to prove a valid arbitration agreement existed.

Cima attached a copy of the Agreement, authenticated by Suster, to its response to the GJ Entities' motion to transfer venue. The GJ Entities offered Cima's copy of the Agreement as an exhibit in support of their motion to compel arbitration, thus providing prima facie evidence of the Agreement's formation. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 121 (Tex. App.—El Paso 2018, no pet.) (prima facie evidence of formation found in signed contract offered into evidence without objection as to authenticity). The burden then shifted to Cima to offer argument and evidence that undermined contract formation. *See Kmart Stores*, 510 S.W.3d at 565.

To demonstrate a fact issue as to formation of the Agreement in its entirety, Cima's response to the motion to compel arbitration included copies of GJP's discovery responses, in which GJP denied Joyce's authority to execute the Agreement, and Joyce's disclosures, in which Joyce denied capacity to do the same. *See id.* In light of that evidence, the trial court conducted a *Tipps* hearing. *See id.* GJ Entities offered no evidence at the hearing.

On the record before us, we cannot say that the GJ Entities satisfied their burden to demonstrate that a valid arbitration agreement exists. Although the agreement attached to the GJ Entities' motion to compel arbitration demonstrated that the Agreement contained the Arbitration provision, the GJ Entities' position in the discovery responses, disclosures, and argument at the *Tipps* hearing, showed that they disputed the existence of a valid contract. Therefore, the trial court could have found that the GJ Entities failed to satisfy their burden to demonstrate a valid arbitration agreement by merely attaching a copy of the Agreement to their motion to compel arbitration.

We next address the GJ Entities' argument that they had withdrawn their contract formation defenses as to the Arbitration provision, thus mandating arbitration under the separability doctrine. We disagree that the GJ Entities could withdraw its defense solely as to the Arbitration provision and that the separability doctrine applies to the GJ Entities' claim that no contract existed.

The GJ Entities argue that GJP's discovery responses and Joyce's disclosures denying the existence of a contract were implicitly withdrawn when GJP withdrew its motion to transfer venue and the GJ Entities filed their motion to compel arbitration. Requests for admissions are governed by rule 198 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 198.3. In a pending action, a "matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." *Id.* A fact admitted in response to a request for admission has the force of a judicial admission. *Marshall v. Vise*, 767

S.W.2d 699, 700 (Tex. 1989). No other evidence is necessary to establish the point at trial and a party may not introduce testimony to controvert it. *Id.* A court may permit a party to withdraw or amend an admission if the party shows good cause, and the court finds that the parties relying on the admission will not be unduly prejudiced and the presentation of the merits will be subserved by permitting withdrawal or amendment. TEX. R. CIV. P. 198.3.

At the *Tipps* hearing, Cima offered into evidence GJP's responses to Cima's requests for admissions in which GJP repeatedly denied the existence of a contract on the grounds that Joyce lacked authority to execute the Agreement on GJP's behalf. The GJ Entities did not object to this evidence. The record does not reflect that the GJ Entities requested or offered to withdraw or amend these admissions, offered good cause to withdraw or amend, or attempted to offer evidence to controvert the admissions. *See Marshall*, 767 S.W.2d at 700; TEX. R. CIV. P. 198.3(a). Thus, the trial court correctly held that GJP's admissions denying that Joyce had authority to execute the Agreement on GJP's behalf were judicial admissions. *See Marshall*, 767 S.W.2d at 700.

GJP's admissions deny the existence of any contract between GJP and Cima. This evidence calls into question the existence of the Agreement in its entirety, the determination of which is a gateway issue reserved for the courts. *See In re AdvancePCS Health L.P.*, 172 S.W.3d at 605. The GJ Entities claim they withdrew their contract formation defenses as to the arbitration provision alone, thus mandating arbitration of the Agreement as a whole under the doctrine of separability. In support, they cite authority for the proposition that an arbitration provision is separable from the remainder of the contract when a party contests the *enforceability* of contract as a whole but does not specifically contest the arbitration provision. However, the GJ Entities cite no authority for the proposition that a party may contest the *existence* of a contract while waiving this defense and ratifying only the contract's arbitration provision. *See Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies*, 409 S.W.3d 181, 195 (Tex. App.—Dallas 2013, no pet.)

("Ratification of a contract occurs when a party recognizes the validity of a contract by acting under, performing under it, or affirmatively acknowledging it.").

A party may not ratify only a selected portion of an agreement. *See Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 757 (Tex. 1980) ("A principal may not, in equity, ratify those parts of the transaction which are beneficial and disavow those which are detrimental."); *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 271 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (a party "cannot both accept the arbitration provision and at the same time deny the validity of the rest of the agreement"). A party also may not ratify and subsequently seek to avoid a contract. *Miller*, 149 S.W.3d at 271.

Because GJ Entities cannot both accept the Arbitration provision as valid and enforceable while denying the existence of the rest of the Agreement, their purported withdrawal of their contract formation defenses as to the Arbitration provision alone is without effect and cannot show the existence of a valid agreement to arbitrate. *See Land Title Co.*, 609 S.W.2d at 757.

The separability doctrine was established in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967). Under this doctrine, arbitration clauses are "separable" from the contracts in which they are contained, and defenses attacking the enforceability of the contract are arbitrable when they are directed to the entire contract rather than the arbitration provision specifically. *Miller*, 149 S.W.3d at 272–73. However, when the very existence of the contract is disputed, a court, not an arbitrator, must decide at the outset whether an agreement was reached. *In re Morgan Stanley*, 293 S.W.3d at 190 ("*Prima Paint* reserves to the court issues like the one here, that the signor lacked the mental capacity to assent."); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("[I]t is clear that because arbitration is a matter of contract, where a party contends that it has not signed any agreement to

–11–

arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration.").

As previously discussed, the evidence presented to the trial court raised a question of whether a contract ever existed between GJP and Cima. This question was one for the trial court, not an arbitrator. *See In re Morgan Stanley*, 293 S.W.3d at 190. The trial court has not yet answered this gateway question.

## Conclusion

Although the GJ Entities produced prima facie proof of a valid arbitration agreement, all of the other evidence before the trial court questioned the very existence of a contract between GJP and Cima. Contract formation is a fundamental issue for the trial court to determine. On the record before us, the trial court could have concluded that the GJ Entities failed to satisfy their burden to demonstrate the existence of a valid arbitration agreement. The trial court did not abuse its discretion in denying the GJ Entities' motion to compel arbitration. Accordingly, we affirm the trial court's order.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

181412F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GJ PARTNERS, LTD., AND GENE
JOYCE, Appellant

No. 05-18-01412-CV     V.

CIMA CONTRACTORS, LLC, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-03091-2018.
Opinion delivered by Justice Partida-
Kipness. Justices Bridges and Molberg
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 23rd day of January, 2020.