**Affirmed and Memorandum Opinion filed May 27, 2021**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00483-CV

---

## WISCH AUTO GROUP, INC., D/B/A BAYWAY CHEVROLET, Appellant

### V.

## JEFFREY MCCARTHY AND MELISSA MCCARTHY, Appellees

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 101505-CV**

---

### MEMORANDUM OPINION

In this interlocutory appeal, appellant Wisch Auto Group, Inc. d/b/a Bayway Chevrolet ("Bayway") challenges the trial court's order denying its motion to compel arbitration and stay litigation. In five issues, Bayway argues that the trial court erred by failing to grant its motion to compel arbitration and stay litigation. We affirm.

# I. BACKGROUND

In January 2019, appellees Jeffrey McCarthy and Melissa McCarthy ("appellees") contacted Bayway concerning a Facebook advertisement posted by Bayway for the sale of a 2014 Chevrolet Tahoe. Because the Tahoe was no longer available, they purchased a 2010 Jeep Wrangler instead. On January 11, 2019, Jeffrey McCarthy gave Bayway his most recent paystub, his most recent bank statement, and a letter from the Department of Veterans Affairs showing his disability compensation. Bayway used this information to prepare a credit application for the purchase of the Wrangler. On the same day, Bayway and the appellees also entered into a Retail Installment Sales Contract ("RISC") for the purchase of the Wrangler.

On January 15, 2019, appellees contacted Bayway and agreed to trade in their 2017 Nissan Sentra as part of the transaction to purchase a 2018 Chevrolet Silverado from Bayway. The appellees did not fill out a new credit application to purchase the Silverado; instead, Bayway used the January 11, 2019 credit application generated by appellees to purchase the Wrangler.

On January 17, 2019, the appellees went to Bayway's dealership to drop off their newly purchased Wrangler for repairs. At that time, the appellees and Bayway executed a RISC for the purchase of the Silverado for $41,024. Appellees and Bayway also executed a Conditional Delivery Agreement ("CDA") at the same time. Bayway and Appellees agreed to a $12,100 credit for the Sentra toward the Silverado purchase. In addition, the RISC stipulated that Bayway would pay off the remaining $17,918 that appellees owed to Santander Consumer USA, Inc. ("Santander") for the Sentra.

When the RISC for the Silverado was executed, Bayway informed appellees that it would be assigning its interest in the RISC to GM Financial ("GM"). On the same day that the CDA and RISC were executed, GM conditionally granted approval

on the credit application for the Silverado. On February 15, 2019, Bayway notified appellees that GM had rejected appellees' credit application for the Silverado. Appellees offered to make their first monthly payment to Bayway for the Silverado, but Bayway insisted that appellees return the Silverado and pick up their Sentra from Bayway's lot. Santander contacted appellees later that day to inform them that Bayway had not paid off the Sentra.

According to telephone transcripts, Bayway called appellees and threatened to report the Silverado as stolen if appellees did not return it to the dealership. Appellees assert Bayway accused Jeffrey McCarthy of fraud and harassed and threatened him by saying he would be sent to jail. Despite requesting Bayway to stop calling them, appellees claim that they had to set their phones to airplane mode to avoid the "nonstop" calls from Bayway. Additionally, according to appellees, Bayway admitted to setting off the appellees' car alarm every morning at 3:00 a.m., stating, "See you at 3 in the morning."

On March 1, 2019, the Pearland Police Department contacted appellees. Appellees were advised that Bayway had filed a police report, alleging that appellees had stolen the vehicle from Bayway. Officer Dennis Gassen of the Pearland Police Department testified as follows:

[Q]: And what did you subsequently learn about this?

[A]: I learned that there was—I learned that the police report—what I learned from her is they purchased not one but two vehicles. I also learned that they did have a Retail Installment Agreement, which the terms were agreed to as far as the purchase amount, the percentage rate. She provided me copies of all those documents that you have as exhibits.

[Q]: Okay. So, did the dealership inform you that there had been a Retail Installment Sales Contract signed on this?

[A]: No, sir.

3

[Q]: So, they just led you to believe that there was no final contract with Mr. McCarthy and that he had stolen the vehicle?

[A]: Yes, sir.

On March 4, 2019, Santander informed appellees that Bayway had already reported appellees' Sentra as "abandoned." Based on this information, Santander repossessed the vehicle at a $1,000 cost to appellees. Santander further notified appellees that it was planning to sell their Sentra on March 18, 2019.

On March 5, 2019, appellees filed their original petition against Bayway, alleging multiple causes of actions, including fraud, violations of the Texas Deceptive Trade and Practices Act (Tex. Bus. & Comm Code section 17.41, *et seq*), ("DTPA") failure to pay off their trade-in vehicle, violations of the Texas Debt Collection Act, and intentional infliction of emotional distress. Appellees additionally sought a temporary restraining order to prevent Bayway from repossessing the Silverado and for violation of the Texas Debt Collection Act. The trial court granted a temporary restraining order preventing repossession of the Silverado.

On March 12, 2019, the temporary restraining order was served on Bayway while Bayway was meeting with Officer Gassen concerning the police report alleging that appellees had stolen the Silverado. Officer Gassen testified that he was present when the restraining order was served and that Bayway acknowledged receiving the restraining order. According to Officer Gassen, despite having just been served with the restraining order, Bayway handed him a set of keys and asked him to repossess the Silverado on its behalf.

On March 25, 2019, a hearing was held on appellees' application for temporary injunction, in which appellees requested the trial court extend the restraining order for the duration of the lawsuit. After hearing testimony from Jeffrey

McCarthy and Officer Gassen, the trial court granted the extension, prohibited Bayway from attempting to repossess the Silverado, and ordered appellees to begin making monthly car payments into the registry of the court.

On April 1, 2019, Bayway filed an answer and counterclaims subject to arbitration, asserting a general denial, affirmative defenses, and counterclaims for breach of contract of the CDA, common law fraud, and "groundless" causes of action under the TDPA. Bayway also filed an emergency motion to dissolve the temporary injunction. On April 8, 2019, the trial court denied Bayway's emergency motion.

On April 3, 2019, Bayway filed a motion to compel arbitration and stay litigation. On June 3, 2019, the trial court held a hearing on Bayway's motion to compel arbitration and stay proceedings, ultimately denying said motion. This appeal ensued.

## II. ANALYSIS

Bayway presents five issues on appeal: Bayway argues generally that the trial court erred by failing to grant its motion to compel arbitration and stay litigation. More specifically, in Bayway's first and second issues, Bayway argues that it established an enforceable arbitration agreement between Bayway and appellees. In its third, fourth, and fifth issues, Bayway asserts that appellees failed to meet their burden on their defenses of fraud, procedural unconscionability, and waiver.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

We review the denial of a motion to compel arbitration for an abuse of discretion. *See Henry v. Cash Biz, L.P.*, 551 S.W.3d 111, 115 (Tex.), *cert. denied*, –––– U.S. ––––, 139 S. Ct. 184, 202 L. Ed. 2d 40 (2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding); *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 418 (Tex. App.—Dallas 2011, pet. denied); *see also Accord Bus. Funding, LLC v. Ellis*, No. 14-19-00279-CV, 2021 WL 1745472, at *1, ___ S.W.3d ___, ___ (Tex. App.—Houston [14th Dist.] May 4, 2021, no pet. h.). A trial

5

court abuses its discretion when it acts without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Under this standard, we defer "to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *Weekley*, 336 S.W.3d at 418 (citing *In re Labatt Food*, 279 S.W.3d at 643). Specifically, "[w]hether an arbitration agreement is enforceable is subject to de novo review." *Id.* But "[a] trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion." *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002)).

"Neither federal law nor Texas jurisprudence recognize a presumption in favor of arbitration when determining initially whether a valid arbitration agreement in fact exists." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *In re W. Dairy Transp., L.L.C.*, 574 S.W.3d 537, 546 (Tex. App.—El Paso 2019, no pet.); *S. Green Builders, LP v. Cleveland*, 558 S.W.3d 251, 255 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Arbitration cannot be ordered in the absence of an agreement to arbitrate, and thus, despite strong presumptions favoring arbitration, the existence of a valid agreement to arbitrate is a settled, threshold requirement in compelling arbitration. *See Morgan v. Bronze Queen Mgmt. Co.*, 474 S.W.3d 701, 705 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "To compel arbitration, a party must: (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement." *In re W. Dairy Transp., L.L.C.*, 574 S.W.3d 537, 545 (Tex. App.—El Paso 2019, no pet.). Ordinary principles of state law determine whether there is a valid agreement to arbitrate. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). The party resisting arbitration must raise an issue of material fact regarding a necessary element the movant was required to prove, or present some evidence

6

supporting every element of a defensive claim that there is no enforceable agreement to arbitrate. *See In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding).

Because the trial court did not state a basis for its ruling in the order denying the motion to compel arbitration, we must uphold the trial court's ruling on any legal theory supported by the evidence. *See In re Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

## B.     EXISTENCE OF AN ENFORCEABLE AGREEMENT

Bayway, as the movant, bore the burden of establishing a valid arbitration agreement binding appellees. *See Henry*, 551 S.W.3d at 115. Accordingly, the first analytical step requires the party moving to compel arbitration is to "show the agreement meets all requisite contract elements." *J.M. Davidson*, 128 S.W.3d at 228.

The elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Bayway asserts that a valid arbitration agreement, subject to the Federal Arbitration Act, exists between it and appellees. *See* 9 U.S.C.A. § 1 *et seq.* The RISC that appellees signed contains the following provisions:

> **Agreement to Arbitrate:** By signing below, [appellees] agree that pursuant to the Arbitration Provision on page 5 of this contract, [appellees] or [Bayway] may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

The Arbitration Provision on page five states:

**EITHER [APPELLEES] OR [BAYWAY] MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

. . .

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between [appellees] and [Bayway] or our employees, agents, successors or assigns, which arises out of relates to [appellees'] credit application, purchase or condition of [the Silverado], this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at [appellees'] or [Bayway's] election, be resolved by neutral, binding arbitration and not by a court action. . . .

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. . . .

Neither [appellees] or [Bayway] waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. . . .

This Arbitration Provision shall survive any termination, payoff or transfer of this contract.

Appellees argue that Bayway has failed to establish the existence of a valid and enforceable agreement. We agree.

### 1.    THE RISC IS NOT A VALID AND ENFORCEABLE AGREEMENT

In the present case, the arbitration provision is contained within the RISC. Therefore, to enforce the arbitration provision, it was Bayway's burden to establish that the RISC is a valid and enforceable agreement. *See Henry*, 551 S.W.3d at 115. However, Bayway performed actions in contravention of the RISC.

First, Bayway had appellees sign and execute both the CDA and the RISC on the same day. The first enumerated paragraph of the CDA states: "This [CDA] shall be void upon the execution of a [RISC] for the sale of the vehicle subject to this [CDA] or the expiration of the 15 day period, whichever occurs first." However, under both the Finance Code and the terms of the CDA, the CDA is automatically void upon execution of a RISC. *See* Tex. Fin. Code § 348.013(c)(2). Appellees argued below that this serves as evidence that Bayway sought to "avail itself of the best of both worlds—holding Appellees to the final terms of the RISC, while at the same time having the option to declare the transaction void under the CDA—in complete disregard of the RISC, paragraph 1 of the CDA, and Texas law."

Second, Bayway failed to pay off appellees' trade-in vehicle per the RISC agreement. Instead of paying off the vehicle, Bayway informed Santander that appellees had abandoned the vehicle. When appellees contacted Bayway, Bayway admitted that it was not paying off the trade-in:

> Hey bud. This is Tyler. Just my recommendation but I would just bring the truck back if I was you. They're going to get it back one way or the other and in the end, its [sic] just going to cost you and in the meantime your Nissan isn't getting paid. You're only making things more difficult for yourself.

Third, Officer Gassen testified that he was led by Bayway to believe that appellees had stolen the Silverado. It was not until Officer Gassen contacted appellees that he learned that a RISC had been signed by the parties. This serves as further evidence that Bayway attempted to enforce the CDA while completely ignoring the existence of the RISC.

Lastly, Bayway filed a counterclaim based on the appellees' alleged breach of the CDA. In Bayway's emergency motion to dissolve the temporary injunction, Bayway argued that appellees had violated the terms of the CDA, and thus, Bayway was entitled to repossess the Silverado. However, as stated above, the CDA and

9

RISC cannot coexist under Texas law. *See* Tex. Fin. Code § 348.013(c)(2). If the RISC is valid and enforceable, the CDA is void. Thus, filing a counterclaim based on the CDA constitutes additional evidence that Bayway denies the validity of the RISC.

We find the present case to be comparable to *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 271 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In *Miller*, an employer sought to enforce an arbitration provision included in an employment agreement. *See id.* However, the employer simultaneously attempted to deny the validity of the remainder of the agreement. We held that the employer "cannot both accept the arbitration provision and at the same time deny the validity of the rest of the agreement." *Id.* We ultimately concluded that the employer failed to meet its burden to establish a valid arbitration agreement, stating: "although [the employer] sought to meet its burden to prove the existence of a valid arbitration agreement by attaching a copy of the alleged employment agreement containing the arbitration provision, all other evidence before the trial court questioned the very existence of an agreement between the parties." *Id.* at 274. Likewise, in the present case, Bayway has attached the RISC that contains the arbitration provision it seeks to enforce as evidence of an enforceable arbitration agreement. However, all other evidence before the trial court appears to deny the existence and validity of the RISC. *See id.* Bayway ignored the existence of the RISC, failed to satisfy the terms of the RISC, failed to inform the police of the RISC's existence, sought to repossess the Silverado, and filed a counterclaim based on the CDA, even though the CDA could only be enforced if the RISC had not been executed. Yet Bayway relies on the RISC in its attempt to compel arbitration. Bayway cannot both accept the arbitration provision and simultaneously seek to deny the validity of the rest of the agreement. *See id.*

Given the record before it, the trial court could have concluded that Bayway failed to satisfy its burden to demonstrate the existence of a valid arbitration

agreement. *See id.* We overrule Bayway's first and second issues. Because we overrule Bayway's first and second issues, we need not address Bayway's third, fourth, and fifth issues concerning whether appellees met their burden of proof on their defenses. *See* Tex. R. App. P. 47.1. Therefore, the trial court did not err in denying Bayway's motion to compel arbitration and stay litigation. *See Henry*, 551 S.W.3d at 115.

## III. CONCLUSION

We affirm the trial court's order denying Bayway's motion to compel arbitration and stay litigation.


/s/    Margaret "Meg" Poissant
Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.